# KANSAS CITY, LAWRENCE, AND SOUTH KANSAS RAILROAD COMPANY *v.* THE ATTORNEY GENERAL.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Argued October 18, 19, 1886.—Decided November 8, 1886.

The acts of Congress of March 3, 1863, 12 Stat. 772; July 1, 1864, 13 Stat. 339; and July 26, 1866, 14 Stat. 289, granting lands to the State of Kansas for railroad purposes, are to be construed *in pari materia*, and as having the one purpose of building a single road from Fort Riley, down the Neosho Valley, to the southern line of that State, and not as distinct grants for different roads, which may come in conflict in the claims under them in regard to the lands granted.

The junction of this road with the one from Leavenworth by way of Lawrence, in the direction of Galveston Bay, as provided in the act of 1863, was not required to be on the very crest of the Neosho Valley, as reached by the latter road, but at a convenient point for such crossing in the narrow valley of the Neosho River; and as this point has been adopted by the companies building both roads, and accepted by the officers of the Land Department in selecting indemnity lands, there is no sufficient reason to be found in the point of junction to vacate the certification of these lands to the State for the company which has built the road and received the patents of the State.

Nor is there any other sufficient reason found in the record in this case for setting aside the evidences of title to these lands issued to the corporation which built the road within the time required by law, to the approval of the officers of the government, whose primary duty it was to certify these lands, and who did so within the scope of their powers.

This was a bill in equity brought by the Attorney General of the United States, to quiet the title to certain lands in Kan-

sas. The decree below was in favor of the Attorney General, from which the railroad company appealed. The case is stated in the opinion of the court.

*Mr. George W. McCrary*, *Mr. John F. Dillon* and *Mr. A. T. Britton* (*Mr. James Hagerman* and *Mr. A. B. Browne* were with them on the brief), for appellant.

*Mr. William Lawrence* (representing settlers), for appellee, argued the following general propositions:

*First Proposition.*—The claim of title under: (1) The land-grant act of March 3, 1863, 12 Stat. 772; (2) The Kansas act of February 9, 1864, accepting the grant of said act of Congress; (3) The patent issued by the Governor of Kansas to the Missouri, Kansas and Texas Company. The defendant, as grantee of the Missouri, Kansas and Texas Company, has no title under these.

*Second Proposition.*—The court cannot support the patent, or any claim of title, by ignoring the statutes and proceedings recited in the patent as the authority for issuing it, and by reference to other statutes or proceedings, dehors, even if by possibility the Secretary of the Interior and the Governor of Kansas might have considered them and made them available to give title, when, in fact, if they considered them, they rejected them, and refused to give title under them.

*Third Proposition.*—The assignment made March 19, 1866, to the Missouri, Kansas and Texas Railroad Company, by the Atchison, Topeka and Santa Fé Railroad Company, of its right to build the Emporia Branch, with its franchises and land rights connected therewith, and the construction of the Missouri, Kansas and Texas road as made, give no right to any indemnity lands—no authority to make a selection thereof. The resolution of the Legislature of Kansas of February 26, 1867, ratifying said assignment, is void.

*Fourth Proposition.*—If the assignment by the Atchison, Topeka and Santa Fé Company to the Missouri, Kansas and Texas Company is valid, yet the latter company acquired no title under the act of 1863 to the lands in controversy.

*Fifth Proposition.*—The Missouri, Kansas and Texas Company never acquired any legal or equitable title to any of the lands now in controversy, under or by virtue of the act of July 26, 1866.

*Sixth Proposition.*—It is submitted that the lands in controversy are not subject to any land grant, because included in the New York Indian Reservation under the treaty of January 15, 1838, never legally revoked.

In support of these several propositions Mr. Lawrence cited in his brief *Benton* v. *Woolsey*, 12 Pet. 27; *United States* v. *Hughes*, 11 How. 552; *State* v. *Vicksburg & Natchez Railroad*, 51 Mississippi, 361; *Leavenworth, Lawrence & Galveston Railroad* v. *United States*, 92 U. S. 733; *Dubuque & Pacific Railroad* v. *Litchfield*, 23 How. 66; *Ohio Life Insurance & Trust Co.* v. *Debolt*, 16 How. 416; *Commonwealth* v. *Erie & Northeastern Railroad*, 27 Penn. St. 339; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420; *Mills* v. *St. Clair County*, 8 How. 569; *Richmond Railroad* v. *Louisa Railroad*, 13 How. 71; *Rice* v. *Railroad Co.*, 1 Black, 380; *United States* v. *Arredondo*, 6 Pet. 691; *Binghampton Bridge Case*, 3 Wall. 51; *Parsel* v. *Barnes*, 25 Ark., 261, 272; *Green* v. *Beeson*, 31 Ind., 7; *State* v. *Bank of State*, 45 Missouri, 528; *Andrae* v. *Redfield*, 12 Blatchford, 407; *S. C.*, 98 U. S., 225; *Morrill* v. *Cone*, 22 How. 75; *Carver* v. *Astor*, 4 Pet. 1; *Crane* v. *Morris*, 6 Pet. 598; *Van Rensselaer* v. *Kearney*, 11 How. 297; *White* v. *Foster*, 102 Mass. 375; *George* v. *Kent*, 7 Allen, 16; *Harris* v. *Fly*, 7 Paige, 421; *McAteer* v. *McMullen*, 2 Penn. St. 32; *Hill* v. *Simpson*, 7 Ves. 152; *Sigourney* v. *Munn*, 7 Conn. 324; *Oliver* v. *Piatt*, 3 How. 333; *Landes* v. *Brant*, 10 How. 348; *Lea* v. *Polk County Copper Co.*, 21 How. 495; *Bradish* v. *Gibbs*, 3 Johns. Ch. 550; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Van Wyck* v. *Knevals*, 106 U. S. 360; *Johnson* v. *Towsley*, 13 Wall. 72; *Quinby* v. *Conlan*, 104 U. S. 420; *Steel* v. *Smelting Co.*, 106 U. S. 447; *Vance* v. *Burbank*, 101 U. S. 514; *Boardman* v. *Reed*, 6 Pet. 328; *Moore* v. *Robbins*, 96 U. S. 588; *Shepley* v. *Cowan*, 91 U. S. 330; *Cunningham* v. *Macon & Brunswick Railroad*, 109 U. S. 416; *O'Brien* v. *Perry*, 1 Black, 132; *Lindsey* v. *Hawes*, 2 Black, 554; *Bagnell* v. *Broderick*, 13 Pet. 436;

*Minnesota* v. *Bachelder*, 1 Wall. 109; *United States* v. *Stone*, 2 Wall. 525; *Hughes* v. *United States*, 4 Wall. 232; *Seward* v. *Hicks*, 1 Harr. & McH. 22; *Lord Proprietary* v. *Jennings*, 1 Harr. & McH. 92; *Holden* v. *Joy*, 17 Wall. 211; *Stoddard* v. *Chambers*, 2 How. 284; *Kissell* v. *St. Louis Public Schools*, 18 How. 19; *Easton* v. *Salisbury*, 21 How. 426; *Brown* v. *Clements*, 3 How. 650; *Wilcox* v. *Jackson*, 13 Pet. 498; *Indiana* v. *Miller*, 3 McLean, 151; *Jackson* v. *Lawton*, 10 Johns. 23; *Railroad Co.* v. *Smith*, 9 Wall. 95; *Doe* v. *Files*, 3 Ala. 47; *Hit-tuk-ho-mi* v. *Watts*, 7 S. & M. 363; *People* v. *Livingston*, 8 Barb. (N. Y.), 253; *New Orleans* v. *De Armas*, 9 Pet. 224; *Marsh* v. *Brooks*, 8 How. 223; *Garton* v. *Canrada*, 39 Missouri, 357; *Lindsey* v. *Hawes*, 2 Black, 554; *Clements* v. *Warner*, 24 How. 391; *Garland* v. *Wynn*, 20 How. 6; *Barnard* v. *Ashley*, 18 How. 43; *Gingrich* v. *Foltz*, 19 Penn. St. 38; *Kansas Pacific Railroad* v. *Atchison, Topeka & Santa Fé Railroad*, 112 U. S. 414; *St. Paul Railroad* v. *Winona Railroad*, 112 U. S. 720; *Kansas Pacific Railway* v. *Dunmeyer*, 113 U. S. 629; *Rice* v. *Railroad Co.*, 1 Black, 358; *Coe* v. *Columbus, Piqua & Indiana Railroad*, 10 Ohio St. 372; *Bank of Middlebury* v. *Edgerton*, 30 Vt. 182; *East Alabama Railway* v. *Doe*, 114 U. S. 340; *Comegys* v. *Vasse*, 1 Pet. 193; *Carleton* v. *Leighton*, 3 Merivale, 667; *Hart* v. *Gregg*, 32 Ohio St. 502; *Murray* v. *Gibson*, 15 How. 421; *Chew Heong* v. *United States*, 112 U. S. 536; *McCoal* v. *Smith*, 1 Black, 459; *United States* v. *Walker*, 22 How. 299; *Galena* v. *Army*, 5 Wall. 705; *Henderson's Tobacco*, 11 Wall. 652; *Arthur* v. *Homer*, 96 U. S. 137; *Clearwater* v. *Meredith*, 1 Wall. 25; *Wabash, St. Louis & Pacific Railroad* v. *Ham*, 114 U. S. 507; *State* v. *Bailey*, 16 Ind. 46; *Paine* v. *Lake Erie & Louisville Railroad*, 31 Ind. 283; *Hale* v. *Ganes*, 22 How. 144.

*Mr. Assistant Attorney General Watson* (*Mr. Attorney General* was with him on the brief), for appellee.

Mr. Justice MILLER delivered the opinion of the court.

This is an appeal from the Circuit Court of the District of Kansas. The suit is brought by B. H. Brewster, Attorney

General of the United States, for and on behalf of the United States. The object of it is to set aside certain instruments in writing, which, if they are valid, are supposed to convey title from the United States for a considerable quantity of land in southeastern Kansas.

An act of Congress, approved July 26, 1866, 14 Stat. 289, granted to the State of Kansas "every alternate section of land or parts thereof designated by odd numbers to the extent of five alternate sections per mile on each side of the road, and not exceeding in all ten sections per mile; . . . for the purpose of aiding the Union Pacific Railroad Company, Southern Branch, the same being a corporation organized under the laws of the State of Kansas, to construct and operate a railroad from Fort Riley, Kansas, or near that military reservation, thence down the valley of the Neosho River to the southern line of the State of Kansas, with a view to an extension of the same through a portion of the Indian Territory to Fort Smith, Arkansas. . . ."

There is the usual clause in this grant providing that if "it shall appear that the United States have, when the line of said road is definitely located, sold any section or any part thereof, granted as aforesaid, or that the right of preëmption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the Secretary of the Interior to cause to be selected for the purposes aforesaid, from the public lands of the United States nearest to the sections above specified, so much land as shall be equal to the amount of such lands as the United States have sold, reserved, or otherwise appropriated, or to which the right of homestead settlement or preëmption has attached as aforesaid, which lands, thus indicated by the direction of the Secretary of the Interior, shall be reserved and held for the State of Kansas for the use of said company by the said Secretary, for the purpose of the construction and operation of said railroad, as provided by this act."

This railroad company, for whose benefit the grant was made to the State of Kansas, afterwards changed its name, by

a valid procedure, into that of the Missouri, Kansas and Texas Railroad Company. Under this latter name it built the road contemplated by this grant, which was completed in due time, and asserted a claim before the Commissioner of the General Land Office for the lands now in question as indemnity for others lost by the previous sale, appropriation, or other disposition of them under the clause above cited in the act of 1866. These lands were on that demand certified to the State of Kansas, and by the State patented to the railroad company. The Missouri, Kansas and Texas Railroad Company afterwards, for a valuable consideration, conveyed them to the appellant in the present case, the Kansas City, Lawrence and Southern Kansas Railroad Company.

The object of this suit is to vacate and declare void the certification of the lands by the Secretary of the Interior to the State of Kansas, as well as the patents issued by that State to the railroad company. There is no allegation of fraud, accident, or mistake, except as the alleged want of authority or power in the officers of the United States to certify these lands to that State may be a mistake in law. Unquestionably, if there was no such power, the government has a right by this proceeding to have those instruments declared void and set aside as a cloud upon its title. The authority of the Commissioner of the General Land Office and the Secretary of the Interior to make this certification of the lands to that State for the benefit of this company depends upon the true construction of this act of 1866, and of certain other statutes on the same subject.

Since the railroad company has constructed the road as contemplated by the statute, and has received the patents for the lands found in place along the line of this road, that is to say, every alternate section, of odd numbers, which had not been previously disposed of, and as the officers of the government have certified the lands now in controversy to be properly selected in lieu of such as were not found in place, it would seem to devolve upon the plaintiffs to show some reason why this authority has not been properly exercised, for the statute declares that the Secretary shall *indicate these* indemnity lands.

It was his primary duty, and that of the Commissioner of the General Land Office, to ascertain whether any lands, and, if so, what amount, were not found subject to the act by reason of previous disposition under the homestead or preëmption laws or reservations, and to select the indemnity lands. They have accordingly, both in the bill and in argument, set up the facts which they suppose to show the invalidity of these transfers.

The first of these, and the most important, is, that by an act of March 3, 1863, 12 Stat. 772, and a supplementary act of July 1, 1864, 13 Stat. 339, these lands became appropriated to the building of another road through the same region of country and through the same lands, the grant being to the State of Kansas for the purpose of building that road. It is argued that these grants, instead of being made by Congress in aid of one and the same road, are different and conflicting grants, and that the earlier grants of 1863 and 1864 prevent the M., K. & T. R. R. Co. from realizing the bounty of Congress on that subject, because there is in the grant to the State for the benefit of the Union Pacific Railroad Company, Southern Branch, an express reservation of any lands granted previously for railroad purposes. The language of the act of 1866 on this subject is as follows:

"Provided, that any and all lands heretofore reserved to the United States by any act of Congress, or in any other manner by competent authority, for the purpose of aiding in any object of internal improvement, or for any other purpose whatsoever, be, and the same are hereby, reserved to the United States from the operations of this act, except so far as it may be found necessary to locate the routes of said road and branches through such reserved lands, in which case the right of way only shall be granted, subject to the approval of the President of the United States."

As the lands granted by the prior acts of 1863 and 1864 had, by the act of the Legislature of Kansas, been granted to the Atchison, Topeka and Santa Fé Railroad Company, a then existing corporation of that State, for the purpose of building a road, with the same general description as to its course down the valley of the Neosho River, which might have run through

these same lands if it had been built by the latter company, it is argued with great earnestness that these lands were necessarily reserved, under this clause of the act of 1866, from the grant, as being reserved by the authority of Congress for the purpose of aiding in that object of internal improvement. If the A., T. & S. F. R. R. Co. had built a line of road along the same general course and through the same lands, twenty miles in width, that the M., K. & T. R. R. Co. has occupied with its road, and asserted a claim to these lands, or to any of them, the argument would be almost irresistible.

If, at the time that the act of 1866 was passed, the A., T. & S. F. R. R. Co., or any other company than the one to which the grant of 1866 was made, was intending to build a road, or expected to build one, or had any authority from the State of Kansas to build one, under the acts of 1863 and 1864, the argument would have force. But on the 9th day of March, 1866, which was four months prior to the act of 1866, the A., T. & S. F. R. R. Co. entered into an agreement with the U. P. R. R. Co., Southern Branch (afterwards known as the M., K. & T. R. R. Co.), by which the latter company assumed all the obligations of the former in regard to building the road which that company had assumed in accepting the grant by the State of Kansas, in consideration of which the A., T. & S. F. R. R. Co. assigned to the U. P. R. R. Co., Southern Branch, all its right, title, and interest in the lands appropriated to the building of that road by the acts of March 3, 1863, and July 1, 1864, and by the acts of the Kansas Legislature conferring these lands on that company. So that, with the exception of the ratification of this agreement and assignment by the State of Kansas, and so far as the two railroad companies themselves could make such an assignment, the U. P. R. R. Co., Southern Branch, to whom the grant of 1866 was made, had, before the passage of that act, become possessed of all the rights existing under the acts of 1863 and 1864 with regard to building a railroad down the Neosho valley.

It is not to be supposed that Congress was ignorant of this transaction, nor that, if the representatives in Congress of the State of Kansas had been opposed to this transfer, they would

have consented to the passage of the act of 1866. But, as that State did ratify this transfer by the one company to the other within six or eight months after it was made, it is reasonable to suppose that Congress, in legislating upon such an important grant of public lands for public uses, did not intend to have two parallel roads for a long distance within the narrow strip of the Neosho Valley, but did intend by all this legislation to secure one road, and, being aware of the transfer by the A., T. & S. F. R. R. Co. to the U. P. R. R. Co., Southern Branch, and of the willingness of the State of Kansas, when her legislature could meet, to ratify that transfer, designed by the act of 1866 to place also in the hands of the latter company the same right and the same grant for the same purposes, and for the one road.

In support of this view it will be seen that, in the later act of 1866, Congress, departing from the principle of the former acts of making the grant directly to the State without prescribing by what means or by what corporations it should construct the road, declares expressly that the grant is made to the State of Kansas for the benefit of the U. P. R. R. Co., Southern Branch, and it did this obviously for the purpose of consolidating all these grants into one grant in the hands of that company, which already had all the rights vested by the other statutes necessary to enable it to build this road down the Neosho Valley.

The history of the legislation of Congress and of the State of Kansas on this subject almost conclusively shows that the several statutes are to be taken and construed as *in pari materia,* and that the only object was the building of one road. By the act of 1866 there was no grant in aid of any other road but that one. The act of 1863 made the grant to the State of Kansas for the purpose of aiding in the construction of a road from the city of Atchison, by way of Topeka, the capital of the State, to the western line of the State, *with a branch from where this road crosses the Neosho,* down the valley of that river to the point where a road from Leavenworth and Lawrence south, for which a grant was made in the same act, crosses the Neosho Valley. In this act no corpora-

Opinion of the Court.

tion is named, but it was left to the State, to which the grant
was in terms made, to employ such agency in the way of a
corporation, private individuals, or its own officers, for the
building of the road, as it might choose. This point of inter-
section with the Neosho River was some distance south of
Fort Riley, through which the main branch of the U. P. R. R.,
Eastern Division, passed on its way from the Missouri River
to the Pacific Coast, and was at or near the town of Emporia.
In 1864 Congress passed an act making an additional grant of
lands to the State for a railroad from Emporia, by way of
Council Grove, to a point near Fort Riley, on the branch
Union Pacific Railroad in said State. Both of these acts were
accepted by the State of Kansas, and both the lands granted,
and the right to build the roads mentioned in these acts of
Congress were conferred upon the A., T. & S. F. R. R. Co. by
the State. These two pieces of road, if ever they were built,
would necessarily constitute one continuous road from Fort
Riley down the Neosho Valley to the point where the road
should cross the line of the Leavenworth, Lawrence and Fort
Gibson Railroad, and this is the road built by the M., K. & T.
R. R. Co. under the act of 1866, and under its contract with
the A., T. & S. F. R. R. Co. and the grants of the State of
Kansas.

Now, it is a strained construction of the act of 1866, in the
face of all the probabilities of the case, imputing to Congress,
in which that State had two Senators and several members of
the House of Representatives, great carelessness, to hold that
they intended each one of these separate statutes to stand by
itself and the claims to be asserted under them to be distinct
grants for different railroads. It is much more reasonable and
consonant to all we know of the transaction, and in considera-
tion of the almost certainty that Congress had in view the
single purpose of building one road down the Neosho Valley,
from Fort Riley to the point of intersection with the other
road, and that it was aware of the agreement between the
A., T. & S. F. R. R. Co. and its grantee in the act of 1866, to
hold that it intended by the later act to ratify and make
good the right which the U. P. R. R. Co., Southern Branch,

already had to the same lands for the purpose of building that road.

The fact that the act of 1866, while in general terms granting these lands to the State of Kansas, declared that that State should hold them for the benefit of the U. P. R. R. Co., Southern Branch, so far from militating against this view of the subject, tends to confirm it. Intending to ratify, to make good, and add to the force of the title of that company, which it had derived from its agreements with the A., T. & S. F. R. R. Co., it did not leave it even in the power of the State of Kansas to confer these lands upon any other company than this one, and thereby prevented all conflict of claims under these several grants. This view of the subject was taken by Mr. Browning, Secretary of the Interior, in a letter addressed to the Commissioner of the General Land Office, March 25, 1867, directing the withdrawal of the lands along the line of the road from public sale or preëmption for the benefit of the U. P. R. R. Co., Southern Branch, and it has been acted upon by the Land Department and by the various Secretaries of the Interior, from that day to this, as the true construction of the statutes.

It is true that when the M., K. & T. R. R. Co. made its application for the lands now in controversy, as indemnity lands, it asserted rights under the acts of 1863 and 1864 by virtue of the assignment of the A., T. & S. F. R. R. Co., and the ratification of that assignment by the State of Kansas, and also under the act of 1866 directly to that company; and it is true that the Secretary of the Interior, while acknowledging the claim to have been made under all the acts, certified the lands to the State of Kansas in accordance with the terms of the acts of 1863 and 1864, instead of issuing patents directly to the railroad company, as was provided for in the act of 1866. But since that company had all the rights conferred by all three of these statutes, and by the ratification by the State of Kansas of the transfer from the A., T. & S. F. R. R. Co., and since that State, after these lands were certified to it for the benefit of this company, issued to it patents of the State for those lands, it is obvious that the company thus acquired the real owner-

ship and the equitable interest in the lands which it had earned by building the road, in accordance with the provisions of all the statutes and all the contracts made upon the subject. If there be any informality in the attempt of the Secretary of the Interior and of the State of Kansas to confer upon the railroad company the legal title to these lands, it is for the company to seek relief and to have those informalities corrected, not for the United States to set aside its solemn instruments in which those rights are evidenced, and under which not only the railroad company then interested, but its grantee, the present appellant, holds these lands or has sold them to innocent purchasers. So far, then, as this objection goes, that one of these acts of Congress nullifies the others, we think it to be untenable.

Another objection strongly insisted upon arises out of the language of the act of 1863. That act provided for two roads, with branches to each. The first was a road from the city of Leavenworth, by way of the town of Lawrence, to the southern line of the State, in the direction of Galveston Bay, in Texas. The second was a road from the city of Atchison, by way of Topeka, to the western line of the State, in the direction of Fort Union and Santa Fé, in New Mexico, with a branch from where this last-named road crosses the Neosho River, down the valley of that river to the point where the said first-named road enters the said Neosho Valley. This branch down the Neosho Valley is the road now under consideration, and the grant of lands of 1863 is to the point on its line where the first-named road, the Leavenworth, Lawrence & Fort Gibson, enters the said Neosho Valley.

It is said that the road of the M., K. & T. R. R. Co., which we have already held to represent the grant of Congress under this statute, was not constructed to the point where the L., L. & F. G. R. R. entered the Neosho Valley, but that those two roads joined at a point far within the entrance of the L., L. & F. G. R. R. into the valley. The distance is said to be about eight or ten miles, and this is supposed to defeat the right of the company building this road to the lands on each side of it. But we are of opinion that this is too narrow a construction of

the language describing the point at which the two roads mentioned in the same statute were expected to meet and cross each other. The construction thus asserted requires that the exact point of the high ground on the north of the Neosho River should be ascertained with great precision where the railroad of the other company, coming from the north, enters the valley. It seems to us, however, that the purpose of Congress was to make a grant of lands along the Neosho Valley to the company which should build it to the most appropriate point, wherever that might be, in this narrow valley at which the two roads might chance to come together; and that, as the road has been built and the lands earned, and the officers of the Federal Government having charge of the matter have accepted this place of junction as the proper one to govern the selection of lands for the company building the road, and since neither of those roads make any objection to this decision, and it is impossible to see how any substantial right of any person can be injured by it, that it is the duty of the court to accept the location of the road as a proper location, in accordance with the action of the officers of the Land Department; and that it is not a case for the Government of the United States to interfere to set aside its own action in the matter, under the loose terms employed in the acts of Congress.

In support of this view of the subject it must appear to any thinking mind that the grant of lands to the M., K. & T. R. R. Co. would not be defeated if the other road from the north did not build into the valley of the Neosho River at all; and yet, if the strict and literal construction of the phrase, "where that road enters the valley," should be adopted, that would be the effect upon the grant. The purpose of Congress being to have these roads cross within the narrow valley of the Neosho River, and the grant of lands to the M., K. & T. R. R. Co. terminate at the point where it came to a junction with the L., L. & F. G. R. R., the latter being continued on to the south, we do not think this objection sufficient to justify a decree setting aside the action of the officers of the government.

It is to be observed that this objection is raised under the language of the act of 1863, and that the act of 1866 contains

no such requirement as that with reference to the crossing of the roads, it being declared in the latter act that the road is to be built down the valley of the Neosho River to the southern line of the State. Of course, if the act of 1866 is, as we suppose, supplementary to the acts of 1863 and 1864, the description of the route of the road and its terminus in the later act is the one which must govern the grant of lands.

Another objection urged to the ownership of the lands by this company under the patents from the State of Kansas is, that the company has received more lands than it was entitled to under the grant. We do not think it necessary to enter into the details of the evidence of how much land was granted, how much was found in place, and how much the road was entitled to as indemnity for lands not so found in place. In the first place, we are not at all satisfied by the evidence in the record that the lands received are in excess of the various grants to this company. In the next place, the issue is not made fairly in the bill, and certainly no particular certificate nor any particular patent from the State of Kansas is pointed out as being the one which contains the excess over the grant, and it is not possible for the court, under any evidence or any pleading, to ascertain which of these certificates and of these patents, or what particular portions of them, should be held void and what valid. *United States* v. *Burlington & Missouri River Railroad*, 98 U. S. 334.

And lastly, while we are not disposed to hold the action of the officers of the Land Department of the government as absolutely conclusive upon such a subject as this, we see no reason why their deliberate action, with careful attention, and all the means of ascertaining what was right, should be set aside in this case. There are other grounds urged for granting the relief sought by the bill, but they are not sufficient to justify such a decree, nor are they important enough to require further discussion here.

*The decree of the Circuit Court is reversed, and the case remanded to it, with directions to dismiss the bill.*