UNITED STATES *v.* MISSOURI, K. & T. RY. CO. *et al.*

*(Circuit Court, D. Kansas.   October 31, 1888.)*

1. PUBLIC LANDS—LAND GRANTS—RESERVATIONS.
    On bill to set aside the patent to even-numbered sections of land granted to defendant railway company, the objection that these sections were not the subject of grant because of the New York Indian reservation under the treaty of 1838 (7 St. U. S. 550) will not be considered; the supreme court, in a former suit against the same company, (118 U. S. 682, 7 Sup. Ct. Rep. 66) having held that the odd-numbered sections of the same grant were not affected by that reservation.

2. SAME—CONSTRUCTION OF GRANT.
    Act Cong. March 3, 1863, granting land in aid of the L. L. & G. road, and act July 26, 1866, having been construed by the supreme court as *in pari materia*,

and enacted with the sole object of building one road, that construction will be followed by the circuit court, and the later act treated as supplementary, rather than independent.

**3.** SAME—CANCELLATION OF PATENT—MISTAKE OF LAND-OFFICERS.

The officers of the land department having in 1873 issued patents to defendant railway company for the sections involved, on the theory that the requirements of the grant as to location and construction of the road had been essentially complied with, and such action of those officers having been acquiesced in ever since, and the lands in large part sold by the patentee, the court, on bill to set aside the patents, will not hold that those officers erred, unless a very clear case is presented.

**4.** SAME—COURTS—FEDERAL JURISDICTION.

Persons claiming particular tracts of these lands by virtue of prior homestead or pre-emption settlements. can under the state practice obtain, by action at law, full protection of their rights without the interference of the United States.

In Equity. Bill to set aside land patents. On demurrer to bill.

*W. C. Perry, John Martin,* and *Wm. Lawrence,* for plaintiff.

*Hutchings & Keplinger* and *Williams & Dillon,* for defendants.

BREWER, J. This is a bill filed by the government to set aside the patent to certain even-numbered sections of land patented to the Missouri, Kansas & Texas Railway Company. The patentee and certain grantees from it of various sections are made parties defendant. All of them joined in a demurrer to the bill, and the questions are now presented on such demurrer. Some years since the government filed a similar bill to set aside patents to the same patentee for odd-numbered sections. That case, on final hearing, was submitted to me, and decided in favor of the government. 25 Fed. Rep. 243. On an appeal to the supreme court the judgment of the circuit court was reversed, and the case remanded, with instructions to dismiss the bill. 118 U. S. 682, 7 Sup. Ct. Rep. 66. The opinion filed in that case by the supreme court is earnestly criticised by the learned counsel for plaintiff, and several pages of their brief are devoted to this criticism. Although such opinion was different from my own, and resulted in the reversal of my judgment, it does not become me to criticise it in the least. On the other hand, it is my duty, as a judge of a subordinate court, to loyally accept it in all its parts as a correct interpretation of the law. If it be true, as counsel say, that there be errors of fact and of law in it, that court, when its attention is called to the matter, will undoubtedly make the correction; meantime it is my duty to follow it, both in letter and spirit. I premise this, because, in my judgment, it avoids the necessity of discussing some of the questions discussed with great elaboration by counsel. I may also add that in view of the magnitude of the interests involved there is a certainty that this case will be taken to the supreme court for review, hence extended discussion on my part of the questions is unnecessary.

It is insisted, in the first place, that these lands were not the subject of grant because of the New York Indian reservation, created by the treaty of 1838. 7 St. U. S. 550. With respect to that question, it is enough to say that if the even-numbered sections were not subject to grant, neither

were the odd-numbered sections; and in the case in 118 U. S. 682, 7 Sup. Ct. Rep. 66, the sixth proposition made by counsel, as appears from their brief, was the same as is now suggested, and, while that question was not in terms discussed by that court, it closes its opinion with these words: "There are other grounds urged for granting the relief sought by the bill, but they are not sufficient to justify such a decree, nor are they important enough to require further discussion here." In view of that expression of opinion from the supreme court, it is unnecessary, if not improper, for me to enter into any discussion of the matter.

The second proposition is that the act of March 3, 1863, making the grant in aid of the Leavenworth, Lawrence & Fort Gibson road, expressly reserved these sections to the United States; and the act of July 26, 1866, does not repeal the former reservation, but recognizes and re-enacts the same reservation, and also that the act of 1866 is not applicable to these lands. It seems to be conceded by the supreme court, in the opinion referred to, that if these acts are to be treated as distinct grants to independent roads, an argument kindred to this would have great force; but the judgment of that court was that the acts of 1863, 1864, and 1866 were to be taken and construed as *in pari materia*, and with the sole object of building one road. Putting that construction upon these various statutes, and regarding them in the same light in which the supreme court seems to have regarded them, the later acts must be treated as rather supplementary than independent, and construing them in that way, the antagonism springing from their reservations disappears. If the later act merely extends or supplements the earlier acts, then they cannot be construed as independent grants, nor as antagonistic. In that view, the effect which has been given to these reserving clauses in other cases ceases to have operating force here, and this proposition must also be overruled.

Again, it is insisted that the road was not built on the line of the definite location, but deflects in some instances therefrom, and near the city of Humboldt to the distance of two miles and a half, and has been since that time operated on the line as built. Hence, by reason of its first failure to construct, and its subsequent failure to operate and maintain on the line of definite location, it is insisted that the grant never became operative, and the officers of the land department exceeded their powers in issuing patents, and that there is a breach of a condition subsequent. It must be noticed that this question does not arise upon an application of the road for patents for these lands, for they were issued in 1873. The department officers then accepted the road as constructed so nearly upon the line as to comply with the conditions of the grant. Fourteen years thereafter, after the land thus patented has been largely, if not entirely, sold by the patentee, this bill is filed. It is obvious that the question presents itself under very different aspects now from what it would then. The executive officers of the government have certain duties of supervision in reference to the execution of grants made by congress, and when they have acted, and their action has been unchallenged for a long series of years, and rights of property have been built up on the faith of their action, a very clear case should be presented before the titles thus resting

for years upon that action are disturbed. In the case from the supreme court, *supra,* it observes:

"And lastly, while we are not disposed to hold the action of the officers of the land department of the government as absolutely conclusive upon such a subject as this, we see no reason why their deliberate action, with careful attention, and all the means of ascertaining what was right, should be set aside in this case."

Again, in the *Maxwell Land Grant Case,* 121 U. S. 381, 7 Sup. Ct. Rep. 1015, the supreme court makes these comments:

"We take the general doctrine to be that when in a court of equity it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt. If the proposition, as thus laid down in the cases cited, is sound in regard to the ordinary contracts of private individuals, how much more should it be observed where the attempt is to annul the grants, the patents, and other solemn evidences of title emanating from the government of the United States under its official seal. In this class of cases the respect due to a patent, the presumptions that all the preceding steps required by the law had been observed before its issue, the immense importance and necessity of the stability of titles dependent upon these official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them, should only be successful when the allegations on which this is attempted are clearly stated, and fully sustained by proof."

These observations of the supreme court admonish me that a patent once issued from the general government is not lightly to be disturbed, and that the perfect title supposed to be conveyed thereby must always be upheld, unless it be manifest that there has been in its issue a clear departure from the authority granted. If this be true in respect to a recent patent, much more is it true in reference to a patent so old as this. Parties place faith, and should place faith, in the action of the government, and rely upon the title which its patent conveys; and when, as appears in this case, many parties have purchased in perfect reliance upon the title of the patent, and many years have passed with it unchallenged, common fairness requires that the title thus apparently conveyed should be sustained, unless it be very clear that there was a want of authority to issue it. Now, generally, I may observe in this case that the construction of the various acts is not clear. The elaborate briefs prepared by counsel on each side indicate that the matter of construction is a doubtful one. When the officers charged with the primary execution of the duty of construction have discharged that duty, and placed a certain construction upon those acts, and issued patents in accordance therewith, and that construction has been accepted unchallenged for a long series of years, then the court may well hesitate before it says that that construction was improper, and the patent issued without authority. These general considerations are also an excuse for not entering upon a more careful and elaborate discussion of the various questions presented by counsel.

One single matter, however, requires notice, and that is the claim that the patentee received more lands than it was entitled to under this grant; that the lands in controversy were the last selected and patented, and therefore the ones whose title may properly be challenged. In respect to this it may be observed that, even if more lands were patented than the company was entitled to, a grave question arises, and is discussed by counsel, whether the title should fail to those last selected or to those most remote from the granted limits. I do not, however, deem it necessary to enter into a discussion of this question, and for this reason: It is a well-known fact that this road for many miles runs through the Osage Indian lands, and that by the decision of the supreme court of the United States none of these lands passed under this or any other grant to railroad companies. Now, the act of 1866, in making the grant, provides:

"But in case it shall appear that the United States have, when the line of said road is definitely located, sold any section, or any part thereof, granted as aforesaid, or that the right of pre-emption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the secretary of the interior to cause to be selected for the purposes aforesaid, from the public lands of the United States nearest to the sections above specified, so much land as shall be equal to the amount of such lands as the United States have sold, reserved, or otherwise appropriated," etc. 14 U. S. St. at Large, 289.

Now, if the right of selection extended to the quantity of lands sufficient to make up the losses caused by the existence of the Osage Indian reservation, then I do not understand that the company has received its full grant of lands; and that such is a true construction of this grant seems to be settled by the decision of the supreme court in the case of *Railroad Co.* v. *Barney,* 113 U. S. 618, 5 Sup. Ct. Rep. 606. So far as any claim made in reference to particular tracts upon which a homestead or pre-emption settlement was made before any rights of the railroad company attached is concerned, it is enough to say that equity does not interfere when there is a full and adequate remedy at law, and that these parties can, under the settled practice of Kansas, obtain full protection of their individual rights without the interference of the United States as plaintiff. Furthermore, it may be observed that under the ruling in *U. S.* v. *Tin Co.,* 125 U. S. 273, 8 Sup. Ct. Rep. 850, it is questionable whether the government can maintain a bill to set aside a patent in order simply to protect the rights of an individual claimant. I deem it unnecessary to add more, for reasons heretofore stated. I have not entered into as full a discussion as the importance of the questions would ordinarily demand, but for the reasons indicated I think that the demurrer to the bill should be sustained, and the bill dismissed; and it is so ordered.