| 43 | 427 |
| 50 | 793 |

## MARY E. WOOD v. J. M. BEACH.

RAILROAD COMPANY, *Legal Title in Grantee of—Homestead—Pre-emption.*
Purporting to act within the provisions of the acts of congress of March 3, 1863, (12 U. S. Stat. 772,) July 1, 1864, (13 id. 339,) and July 26, 1866, (14 id. 289,) granting lands to the state of Kansas for railroad purposes, the department of the interior of the United States withdrew in 1867 all the odd sections within the limits of twenty miles of the located route of the railroads.   In 1870, W. settled upon one quarter of an odd section, so withdrawn, and made improvements thereon; during that year he made application to the local land office to file on the land, but was informed that the land had been withdrawn, and his application was rejected.   He continued to reside upon the land and to make improvements thereon, and was upon the land when it was selected by the railroad companies on August 8, 1872, but he took no appeal from any ruling or order of the local land office.   A patent was issued for the land to the Missouri, Kansas & Texas Railroad Company, on May 19, 1873.   *Held,*

That the grantee of the railroad company has the legal title to the land, and is entitled to possession thereof as against W. *Held, further*, That W. never acquired any legal or equitable title to the land, either as a homesteader, or preëmptor, under the acts of congress relating to public lands.

### *Error from Allen District Court.*

THE opinion contains a sufficient statement of the facts.

*A. L. Allen,* for plaintiff in error; *William Lawrence,* of counsel.

*Hutchings & Keplinger,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the court below brought by J. M. Beach against Mary E. Wood, to recover the possession of the northeast quarter of section 1, township 26, range 20, in Allen county. At the June term, 1889, judgment was rendered for the plaintiff and against the defendant, and Mrs. Wood brings the case here.

The husband of Mrs. Wood, C. B. Wood, deceased, made a settlement upon the land on June 8, 1870, and made lasting and valuable improvements. J. M. Beach claims title through conveyances from the Missouri, Kansas & Texas Railroad Company, and the Leavenworth, Lawrence & Galveston Railroad Company. The patent for the land was issued May 19, 1873.

It appears from the record that the land is in the indemnity strip of the Missouri, Kansas & Texas, and the Leavenworth, Lawrence & Galveston railroad companies. The land was withdrawn by the department of the interior on March 19, 1867, and April 30, 1867. The first order of the department was received at Humboldt on April 3, 1867, and the second on May 10, 1867. In the letter of March 19, 1867, from the department of the interior to the register and receiver at Humboldt, it was said, among other things, that —

"You will, upon its receipt, proceed to mark on your plats the limits thereon designated, and will reserve from sale, loca-

tion, or entry of any kind, except in case of *bona fide* pre-emptions initiated prior to withdrawal, all the odd-numbered sections within the ten-mile limits, and all the vacant lands between the ten- and twenty-mile limits. The even sections within the ten-mile or granted limits you will withdraw from private entry, and the same will only be subject to preëmption and homestead entry at the rate of $2.50 per acre until regularly offered at public sale, except in cases of *bona fide* pre-emptions where settlement was made prior to this withdrawal, wherein the party may make proof and pay for the same at $1.25 per acre."

In the letter of April 30, 1867, from the department of the interior to the register and receiver at Humboldt, it was also said:

"Under date of March 19, 1863, I transmitted to you a diagram showing the designated line of route, with the ten-mile or granted limits of the Leavenworth, Lawrence & Galveston Railroad, for which a grant of land is made to Kansas by the act of congress, approved March 3, 1863.

"By my letter accompanying the diagram, I ordered, with the approval of the secretary, that the odd sections within said limits should be withheld from further sale or location, preëmption or homestead entries, except where inceptive preëmption rights had attached prior to withdrawal, and directed that the even sections should be held subject to preëmption and homestead entry, at $2.50 per acre.

"Herewith I inclose a map of the actual location of the route of said road, with that portion of the ten- and twenty-mile limits designated by section lines as falling within your district. You will now withhold from sale or location, preëmption or homestead entries, all the odd sections within the limits of twenty miles, as laid down on the accompanying diagram, the even sections within the ten-mile limits being held at $2.50, as under the former withdrawal." (See *K. C. L. & S. K. Rld. Co. v. Attorney General,* 118 U.S. 682.)

The land was selected by the railroad companies on August 8, 1872, and approved April 10, 1873. At the time of the selection, Wood, with his family, was living on the land; but his settlement was not made until after the withdrawals of 1867. Even if the withdrawals of the land in the indemnity strip by the department of the interior in 1867 were not fully

authorized by the statute, so long as the order of withdrawal was actually in force it probably was sufficient to defeat any settlement for preëmption or homestead.　　It was said in *Wolsey v. Chapman*, 101 U. S. 755:

"It is conceded that the lands in controversy were actually reserved from sale by competent authority when the selection was made under the act of 1841.　　They were reserved also in consequence of the act of 1846.　　The proper executive department of the government had determined, that because of doubts about the extent and operation of that act, nothing should be done to impair the rights of the state above the Raccoon fork until the differences were settled, either by congress or judicial decision.　　For that purpose an authoritative order was issued, directing the local land officers to withhold all the disputed lands from sale.　　This withdrew the lands from private entry, and, as we held in *Riley v. Wells*, [not reported,] was sufficient to defeat a settlement for the purpose of preëmption while the order was in force, notwithstanding it was afterward found that the law by reason of which this action was taken did not contemplate such a withdrawal."

When Wood, in 1870, made application to the local land office at Humboldt to file upon the land, he was informed that the land had been withdrawn, and his application was rejected. Subsequently he renewed his application to the local land officers, but never appealed from any of the rulings or decisions of that office.　　It does not appear that he tendered the fees at the time of his applications.　　He held possession of the land, but otherwise acquiesced in the ruling of the local land officers.　　He never appealed to the land department at Washington.　　One of the duties of that department in cases relating to the public lands is to correct errors of law and of fact committed in the local land offices, when properly brought to its attention. (*Krichbaum v. Perry*, 5 Land Dec. 403; *Burnham v. Starkey*, 41 Kas. 604; *Ard v. Pratt*, just decided.)

The judgment of the district court will be affirmed.

All the Justices concurring.