No. 23,763.

THE STATE OF KANSAS, *Appellee,* v. BEN WOLKOW, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Broker's Assistant May Testify as to Books and Their Contents Kept in Usual Course of Business.* A witness who was an assistant in a broker's office and who was familiar with its record of business transactions may testify that the record was kept in the usual course of business, and may testify as to its contents, although she herself did not make the entries in such record.

2. SAME—*Evidence.* Other objections to corroborative evidence examined and not sustained.

3. SAME—*Accused Absent from the State—Committing Crime in This State Through Agent—Instructions.* An instruction touching the criminal responsibility of one who, while absent from the state, commits a crime or participates in its commission, by an agent or other means within the state, examined, and held to be a correct and pertinent statement of law, following section 7930 of the General Statutes of 1915.

4. SAME. The actual presence of a defendant within the state at the time of the commission of a crime with which he is charged is not a prerequisite in fixing his criminal responsibility therefor.

5. SAME. The antiquated rule that a person who while without the state commits a crime within the state by means of a guilty agent cannot be prosecuted for such crime but can be prosecuted if he perpetrates the crime by means of an innocent agent, is no part of Kansas jurisprudence.

6. SAME. When the state's admitted theory of a defendant's participation in a crime committed in this state was that he was personally absent from the state at the time of its commission, the ordinary instruction touching the effect of an *alibi* was not pertinent, and was properly refused; and *held,* also, that the instruction given was correct.

7. SAME—*Surplus Matter in Verdict—Not Prejudicial.* Some surplus matter in the jury's verdict of guilty of grand larceny, which specified the means by which the defendant committed the crime, did not vitiate the verdict and wrought no prejudice to defendant.

8. SAME—*Charge of Burglary and Grand Larceny—Conviction of Grand Larceny Sustained.* In a prosecution for burglary and grand larceny, the state's evidence tended to show that the bank of Buhler, in Reno county, was burglarized and robbed of a large amount of liberty bonds. The defendant, a pawnbroker of Wichita, went to Kansas City, Mo., some days before the crime, and remained there for about two weeks. While there he cultivated the acquaintance of a bond broker's firm under an assumed name, consulted the firm about bond prices, and said he expected to receive some liberty bonds which he would bring to the broker's office for sale. On the third visit, a week after the crime, he brought to the broker's office about $2,000 worth of bonds, one of which was particularly identified as part of the property stolen from the Buhler bank. Record examined, no prejudicial error discerned therein, and judgment of conviction for grand larceny affirmed.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed March 11, 1922. Affirmed.

*George McGill,* of Wichita, and *Carr W. Taylor,* of Hutchinson, for the appellant.

*Richard J. Hopkins,* attorney-general, *William H. Burnett,* county attorney, and *E. T. Foote,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   This was an action in which the defendant was prosecuted on a charge of burglary with explosives, and grand larceny.   He was convicted of the latter offense and appeals.

The state's case against the defendant tended to prove the following facts:   The State Bank at Buhler, in Reno county, was burglarized on Friday night, February 7, 1919.   The bank vault had been blown open with explosives, and a large number of safety deposit boxes had been opened and looted.   In these safety deposit boxes were liberty bonds and other securities belonging to the bank's patrons.   Many thousands of dollars' worth of these bonds was stolen.   The defendant, Ben Wolkow, who kept a pawnshop in Wichita, went to Kansas City, Mo., a few days before the crime and arranged to stay there for a couple of weeks and was thereabout on the night of the burglary.   On Monday or Tuesday, three or four days after the burglary of the bank and theft of the bonds, Ben Wolkow, called on a bond broker in Kansas City, Mo., giving the name of M. Kaplan, of Wichita, and asked the prices on liberty bonds of all issues.   He stated that he expected to receive some bonds.   He called a second time during the same week on the same errand, and stated he would telephone his brother in Wichita to forward the bonds and that he would bring them to the broker's office.   On February 14, one week after the crime at Buhler, he again called at this broker's office with some two thousand dollars' worth of bonds of the third and fourth issues, and sold them to the broker.   Within a few hours thereafter one of these bonds, a $50 bond of the third issue, was identified by its number as one of the bonds stolen from the Buhler bank.   The wife of the broker who purchased the bonds came to Wichita the following week and identified the defendant as the person who had called at the broker's office three times the preceding week inquiring about the bond market, and who, under the name of M. Kaplan had sold and delivered the bonds, including the particularly identified one, to her husband's firm.

The defendant appeals from the judgment of conviction, assigning many errors which relate to the admission of incompetent evidence, to the instructions given and refused, and to the court's ruling on his motion in arrest of judgment.

Our attention is first directed to the testimony of the wife of the

Kansas City bond broker. She gave this testimony at the preliminary examination, and it was read at the main trial. Counsel for· defendant objected to part of her testimony for the reason that it related to matters not within her own knowledge. The husband of the witness made the actual purchase of the stolen bonds from defendant. But the evidence of the witness clearly showed that she was familiar with the business methods of her husband's firm, that she ˙assisted him in his business, that she was present when her husband purchased the bonds from the defendant, that the record of the bonds with their serial numbers and including the one positively identified was made in the usual course of business. That she did not accompany her husband to the bank and see him pay over the cash to the defendant or see the defendant cash the check is immaterial. The chief purpose of the testimony was to establish the fact that the stolen bonds or one of them was in the possession of the defendant within a few days after the theft of them. The testimony on that point was clear and direct, as was also the further incriminating circumstance that he had put in most of the week succeeding the crime in establishing a business relationship with this broker's firm, under an assumed name, for the purpose of disposing of the stolen bonds and that he did thus dispose of them. This evidence was competent. (Gen. Stat. 1915, § 7288; *The State v. McCormick,* 57 Kan. 440, 445, 46 Pac. 777; *The State v. Stephenson,* 69 Kan. 405, 76 Pac. 905; *Richolson v. Ferguson,* 87 Kan. 411, 124 Pac. 360; *Cockrill v. Railway Co.,* 90 Kan. 650, 136 Pac. 218; *Flanigan v. Railway Co.,* 108 Kan. 133, 193 Pac. 1077; 2 Wigmore on Evidence, § 1530.)

In *The State v. Mooney,* 93 Kan. 353, 144 Pac. 228, which was a prosecution for burglary and larceny in a freight car, the fact that the freight car was sealed was established by the railway company's record, but neither the person who sealed the car nor the person who made the entry in the record was produced to testify. But it was shown that the record was made up in the company's usual way of transacting its business, and it was held that the evidence was admissible. In the present case, at the preliminary, the original record of the bonds purchased from defendant was introduced, and the testimony of the witness was given in connection therewith.

Another objection to the evidence concerned the evidence of a banker in Kansas City, Mo., who testified that he recognized the signature of the broker on the check given in payment of the stolen

bonds. The check was made payable to M. Kaplan. The objection was that it was "something that took place in the absence of the defendant, and calling for the conclusion of the witness, and too general." We discern no point to this objection, and it was properly overruled. The presence or absence of the defendant was immaterial. The evidence served slightly to corroborate the testi-' mony of the broker's wife, that defendant had a bond transaction with her husband's firm on that day.

Turning then, to the instructions given by the trial court, we note that the state made no contention that the defendant was personally present at Buhler, in Reno county, on the night the bank was burglarized and plundered. Indeed, the prosecuting attorney, in his opening statement to the jury, in part, said:

"Now that is our theory in this case. We are not going to introduce any evidence to try to show that Ben Wolkow was in the State of Kansas, or in Buhler, Kansas, on the night of February 7, 1919. We have grave doubts whether he was there. I don't believe he was there, but I do believe that by means of some agency he obtained those bonds from the Buhler State Bank, and that he was in the possession of those bonds recently after they were stolen, sufficiently recent to show that he was the guilty man, and that he participated in some manner in the robbery, in the burglary. We think our evidence will be sufficient to show that."

It was on this theory that the case was tried by the state. The principal complaint of defendant as to the instructions was concerning No. 8, which reads:

"The jury are instructed that section 7930 of the General Statutes of Kansas of 1915 provides:

" 'Every person being without the state, committing or consummating an offense by an agent or means within the state, is liable to be punished by the laws thereof in the same manner as if he were present and had commenced and consummated the offense within the state.'

"The jury are further instructed that it is a maxim of the law that: 'That which a person does by another, he does himself,' and if you believe, from all the evidence and circumstances in evidence in this case beyond a reasonable doubt, that the defendant, Ben Wolkow, by an agent or means committed the offense of burglary or larceny charged in the information, although he was not in the State of Kansas at the time, then you should return a verdict of guilty of the offense so committed the same as if he had been present in Buhler, Reno County, Kansas, and had committed the crime himself. In other words, if the defendant, Ben Wolkow, employed and procured some other person or persons to commit the offense charged in the information, and the person or persons so employed and procured did commit the said offense, then the defendant Wolkow would be guilty of the offense although he was not in the State of Kansas."

It is argued for defendant that notwithstanding the statute which was quoted in the instruction itself such instruction was not a correct statement of the law; and excerpts and citations from decisions in other jurisdictions are cited in support of that contention. But while we should give due deference to these precedents in the absence of pertinent rulings of our own, yet we must follow our own statutes and our own analogous precedents where we have them. The statute quoted in the court's instruction is valid and pertinent. Moreover, our statutes also provide that accessories before the fact, even in felony cases, may be tried and punished as principals. (Gen. Stat. 1915, § 3332; *The State v. Cassady,* 12 Kan. 550; *The State v. Mosley,* 31 Kan. 355, 2 Pac. 782; *The State v. Patterson,* 52 Kan. 335, 34 Pac. 784.)

That the defendant's actual presence within the state at the time of the commission of a crime with which he is charged is not a prerequisite in fixing his criminal responsibility therefor, has been held in *In re Fowles,* 89 Kan. 430, 131 Pac. 598; *The State v. Wellman,* 102 Kan. 503, 508, 170 Pac. 1052; *The State v. Johnson,* 109 Kan. 239, 199 Pac. 104; 12 Cyc. 208; 16 C. J. 163, *et seq.;* Note in 33 L. R. A., n. s., 331 *et seq.)*

Against this authority of statute, precedents, and text-writers, defendant cites cases which still adhere to the old distinctions between principals and accessories, and which draw subtle niceties between principals who from without the state perpetrate crimes within the state by means of *guilty* agents and those who commit them by means of innocent agents. It must suffice to say that having blazed our own trail, we decline to follow this antiquated rule which, in these days when crimes, as well as legitimate business, can be effectually consummated at long distances and across state lines, would practically frustrate the prosecution and punishment of criminals. The criticized instruction contained no error.

But it is urged that there was no evidence on which to base such an instruction. The defendant was not convicted of the crime of burglary. He was convicted of grand larceny. The fact of the crime of grand larceny was established. The evidence inherent in the circumstances clearly showed primarily how it was done—by the agency or means of one or more miscreants. Some of the stolen property was proved to have been in defendant's possession a week later, and it was also proved that within three or four days of the crime he anticipated that the bonds would reach his hands and be

available for disposition by him. There is not even a remote probability that he was only an accessory after the fact. How could he know that the stolen bonds would be forthcoming and in his control for disposition so promptly after their theft, and him in Kansas City, Mo., unless he had foreknowledge of the design to burglarize and plunder the bank of its contents? The unexplained possession of the recently stolen property was *prima facie* evidence sufficient to convict him, and the circumstances sufficiently disclosed the means by which he with others perpetrated the crime to justify the instruction given.

Complaint is also made because the trial court refused to give an instruction on the law of *alibi*—that "to entitle the defendant to an acquittal, it is sufficient if the evidence raises a reasonable doubt of his presence at the time and place of the commission of the crime charged," etc. There was no purpose to be served by giving such instruction. The jury did not need to consider whether the defendant was at Buhler at the time the bank was robbed; the state conceded that he was not. The trial court correctly instructed as follows:

"The jury are instructed that the defendant in this case claims, among other defenses, an alibi; that is, that he was absent from the place of the commission of the crime at the time the same was committed, and that he was outside of the State of Kansas, and therefore could not have committed the crime charged in the information.

"The jury are instructed that if, from all the evidence and circumstances the jury entertain a reasonable doubt as to whether or not the defendant was in the State of Kansas at the time said alleged crime was committed, then you cannot convict the defendant of personally committing the crime, and if you fail to find, from all the evidence, that the defendant was in the State of Kansas at the time the alleged crime was committed, you will then consider the question of whether or not the evidence shows, beyond a reasonable doubt, that he is guilty of committing the offense by an agent or means as you are instructed in instruction No. 8."

Error is also assigned because defendant's motion in arrest of judgment was overruled. The verdict was—

"We, the jury empanelled and sworn in the above entitled case, do upon our oaths find the defendant, Ben Wolkow, guilty of grand larceny, as charged in the information by an agent within the State of Kansas, the defendant, Ben Wolkow, at the time of the commission of said larceny being without the State of Kansas."

Defendant's point on this motion was that the information charging burglary and grand larceny "did not charge appellant with com-

mitting a crime by an agent and therefore he was not by the verdict of the jury convicted of the offense charged." This verdict merely contained some unnecessary and surplus matter which could not prejudice the defendant. The same point was answered by Judge Brewer, in the Cassady case, *supra.* There the information charged burglary and grand larceny. The jury found him guilty of being "accessory before the fact to grand larceny." The court said:

"The verdict might properly have been simply guilty of larceny; yet specifying the particular connection of defendant with the crime did not vitiate the verdict. It wrought no prejudice to his rights." (p. 557.)

Several less important matters are presented in the brief of defendant's counsel. These have been duly noted, but they require no discussion. Nothing approaching the gravity of prejudicial error appears in the record, and the judgment is affirmed.