## No. 13,637.

### NEWTON *v.* THE PEOPLE.
(41 P. [2d] 300)

Decided February 4, 1935.   Rehearing denied February 25, 1935.

Mr. BENTLEY M. McMULLIN, Mr. L. M. PERKINS, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. WALTER F. SCHERER, Assistant, for the people.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, who is hereinafter referred to as Mrs. Newton, was convicted of larceny and sentenced to a term of one to three years in the penitentiary. To review that judgment she prosecutes this writ and asks that it be made a supersedeas. The errors assigned and argued, and which require consideration, may be thus summarized:

The offense charged was the larceny, in La Plata county, Colorado, of one steer of the value of $25. Mrs. Newton was never in Colorado in connection with the theft, but always in New Mexico. There is no sufficient evidence that she advised or encouraged the commission of the offense. If she did so it was done in New Mexico. There was no proof of value. Hence the Colorado court was without jurisdiction to try the cause and the verdict is unsupported by the evidence.

The essential facts clearly established by the state are, save for the testimony of Mrs. Newton, undisputed. She had lived for some five years with her husband, a nineteen year old son named Arlon, and two other children, on a farm in San Juan county, New Mexico, about eight miles south of the Colorado line. One Henson, a single man twenty-nine years of age, had been employed thereon for about one month. In that vicinity also resided Smith and Jones, family men in middle life, who had long been

acquainted with the Newtons. On the morning of September 2, 1933, Smith, accompanied by his brother, went to the Newton place for a load of wheat. Mrs. Newton appeared and voluntarily supplied them with wine which she helped consume. About 11:00 a. m. she remarked that she would get them some dinner if she had any meat to cook, and suggested that they "go and get some." Smith responded, "All right." Shortly thereafter Mr. Newton and Henson appeared on the scene and took to mill the wheat which had been loaded. After their return, and while Smith, Henson and Arlon were in the blacksmith shop at the Newton place, Mrs. Newton came out and said, "We are going after a beef tonight. Do you want to go along?" Arlon and Henson assented. About 2 p. m. Mrs. Newton and Henson took Smith home in the former's automobile, telling him they would call for him just before sundown. In Mrs. Newton's car, and accompanied by Arlon, they accordingly arrived, finding Jones in Smith's company. They had brought wine with them and all drank. It was proposed to Jones that he join the expedition. He assented, and with Henson driving, Mrs. Newton in the front seat with him, and the others in the rear, they started. As they neared the lane leading to the Newton place, which they had to pass on their journey north, Mrs. Newton remarked that her husband objected to her taking the car and the wine, that he had "raised Hell about it," and perhaps she had best go home. The others acquiesced and drove her up to the house. On getting out of the car she told them to hurry back, that she would have supper going when they returned. They drove to the nearest filling station, bought gasoline, and headed up the La Plata river toward the Colorado boundary. Shortly after crossing it they encountered cattle. Smith and Arlon got out of the car and the latter, with Smith's rifle, shot the animal in question. The head and intestines were removed and the carcass loaded and taken back to the Newton place. They arrived about 10:00 p. m. There the skin was removed and later burned. There

was no light in the house, the occupants having apparently retired. Half the animal was hung in a tree and Smith and Jones each took one of the remaining quarters. Next morning Mrs. Newton, Arlon and Henson hung the Newton half in the bedroom occupied by the two latter, and the family began and continued consumption of the meat until discovery. It was later sewed up in sacks, hidden in a clothes closet and covered with clothing. There it was found by officers with a search warrant after Mrs. Newton had denied that she had any meat in the house and refused permission to search. There is no further evidence of plan or conspiracy and it is clear that when the proposal was made and the expedition started, no definite location, animal, or owner, was in the minds of the five or any of them. On discovery by the officers Mr. Newton was arrested and committed to jail. The others attempted to secure his release by dealing with the prosecuting witness, and Smith sought to cover up the crime by butchering one of his own animals. Within a few days, the material facts being disclosed, Newton was released and the others charged, arrested and incarcerated. After Mrs. Newton's arrest she admitted to the officers that she knew the men were going to steal meat and when she found half the animal at her place knew it was stolen. Arlon entered a plea of guilty and was sentenced to the reformatory. Smith, Jones and Henson entered similar pleas and were sentenced to the penitentiary. The last three testified for the people herein. Quite evidently the jurors believed their testimony and the record discloses no reason to doubt it. Mrs. Newton and her husband were her only witnesses. She agreed, in many details, with those of the state, but so far differed from them as to relieve herself of culpability. Her testimony need not be further examined since its inherent improbability condemns it. That she was the moving spirit in this crime can not be doubted. She first suggested it. All the state's witnesses agreed that she never thereafter discouraged it or hinted a lack of sympathy or support. She furnished the auto-

mobile.  It was driven by the hired man, and her minor son did the killing, both of whom had embarked upon the enterprise at her instigation and were quite apparently under her domination.  She received one-half the plunder, knowing it to have been stolen in pursuance of the plan she had originated and with the machinery she had set in motion.  She concealed her share and denied possession. She attempted to bribe the prosecuting witness, was loud in her denunciation of those whom she called "the laws," and was so insulting and contemptuous on the stand that she had to be severely dealt with by the court.  It is clear that her husband was obliged to content himself with protests and felt powerless to further interfere.  These are hard things to be obliged to say of a woman, a wife and a mother.  But the facts are hard, they speak louder than language, and their plain statement is essential to our conclusions.

The following propositions are relied upon for reversal : (1) The information was defective in that it did not disclose that Mrs. Newton was charged as an accessory; (2) it was misleading in that it charged her acts were committed in Colorado whereas they were all committed in New Mexico, as was well known to the district attorney, and no attempt was made, or intended, to show otherwise; (3) Mrs. Newton withdrew from the venture at such time and under such circumstances as to discharge her of culpability; (4) the Colorado court was without jurisdiction; (5) the alleged value of the animal was not established; (6) had all Mrs. Newton did been done in Colorado the evidence is insufficient to support the verdict.

1. Our statute defines an accessory, and adds: "He or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly."  C. L. 1921, §6645.  We have held that an accessory may therefore be charged as principal.  *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5.  The particulars in which an accessory aided and abetted, or

advised and encouraged, the principal, need not be recited. 31 C. J., p. 740, §290.

2. Had this crime been committed in one county in Colorado, and advised and encouraged in an adjoining county in the same state, it would scarcely be contended that the omission of the allegation of that diversity would be fatal to the information. If not we fail to see the logic of the position that a different rule applies if the counties are in different states. The identical question has been decided under an almost identical statute. *State v. Chapman*, 6 Nevada 320. There an accessory, who never left the state of California, was charged, tried and convicted of a train robbery in Nevada. His position was similar to that of Mrs. Newton here. The Supreme Court of Nevada held against him. We think its reasoning sound and its conclusion correct, and note no material distinction in the issues.

3. It is apparent, from what we have already said, that Mrs. Newton never withdrew from the enterprise. Her personal presence, her most insignificant contribution, was for a time wanting. But her suggestion, her influence, her automobile and the assurance of her approval, remained; and the confidence which these inspired that she would welcome the lion's share of the spoils and help to conceal the crime, was vindicated by her conduct.

4. If the information was sufficient, if an accessory may be charged as principal, if his acts need not be specified, and if he may be prosecuted in a jurisdiction in which he has not set foot, for a crime therein committed, all of which we have hereinbefore held, then clearly the court had jurisdiction in the instant case.

5. Under our general larceny statute the value of the property stolen must exceed $20 to support a penitentiary sentence. C. L. 1921, §6719. But our special statute concerning the theft of livestock makes that offense grand larceny and provides a maximum penalty of ten years in the penitentiary and $5,000 fine, regardless

of value.   C. L. 1921, §6728.  The allegation of value herein was mere surplusage.   36 C. J, p. 826, §301.

■   6. From our statement, supra, of the activities of Mrs. Newton the jury was clearly justified in finding that the evidence established beyond a reasonable doubt that she aided and abetted, advised and encouraged, the larceny perpetrated.

■   No instructions given in this case were objected to and no tendered instruction was refused.   In view of that fact, and other defects in the record, it is doubtful if Mrs. Newton was entitled to a review on any error assigned. We have elected however to ignore these technical objections.

The judgment is affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE YOUNG concur.