CULBERTSON, APPELLANT, *v.* SWEENEY, SHERIFF, APPELLEE.

(No. 18695—Decided May 11, 1942.)

*Messrs. Pollack & Pollack,* for appellant.

*Mr. Frank T. Cullitan,* prosecuting attorney, and *Mr. Neil W. McGill,* for appellee.

SKEEL, J. The applicant filed a petition in the Court of Common Pleas seeking a writ of *habeas corpus.* He had been arrested upon a warrant issued by the direction of the Governor of Ohio upon the request of the Governor of New York for his extradition to the state of New York, the applicant having been indicted as an accomplice of one Ruth Fraser for the crime of abortion. The crime is alleged to have been committed in Buffalo, New York. It is admitted that the applicant in this proceeding was not in the city of Buffalo or in the state of New York at the time the crime is alleged to have been committed nor had he fled the jurisdiction of the state of New York at any time before or after that date to avoid standing trial on the indictment.

It is the contention of the applicant that the sole constitutional authority by which a governor is authorized to cause a warrant to be issued for a fugitive from justice from another state and to permit officers of that state to extradite such fugitive is contained in Section 2, Article IV of the federal Constitution, which section in part provides as follows:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

The Congress, upon the authority of Section 2, Article IV passed Title 18, Section 662, U. S. Code, to provide the procedure for carrying into effect such constitutional provisions.

Title 18, Section 662, U. S. Code, reads as follows:

"Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months

from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the state or territory making such demand, shall be paid by such state or territory.''

The Uniform Extradition Act which is now in force by statutory enactment in thirty-one states of the Union became a part of the statutory law of this state on August 20, 1937, and is designated as Sections 109-1 to 109-32, inclusive, General Code. Section 109-2 provides as follows:

''Subject to the provisions of this act, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.'' (117 Ohio Laws, 588, Section 2, effective August 20, 1937.)

Section 109-3, General Code, insofar as is material, reads:

''No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing alleging, except in cases arising under Section 6 [Section 109-6, General Code], that the accused was present in the demanding state at the time of the commission of the alleged crime * * * .''

Section 109-6 authorizes the Governor of this state to grant a requisition of the governor of another state seeking the arrest and surrender of a person in this state who is charged with a crime in the state from which the request has been made, where such person was not physically present at the time the alleged act

was performed and therefore did not flee from the jurisdiction of such state to avoid punishment but whose participation in the claimed criminal act was as a co-conspirator or aider or abettor or whose commission of such criminal act was through an innocent human agent or by means of an inanimate object. It provides as follows:

"The Governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in Section 3 [Section 109-3, General Code], with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

It is contended by the applicant that Section 109-6, General Code, is unconstitutional for the reason that it is in conflict with Section 2, Article IV of the federal Constitution. Such contention cannot be supported. The section of the Constitution referred to provides for the right of extradition from one state to another of those who are fugitives from justice of the requesting state. The Congress has no power to pass legislation upon any subject unless such power is directly conferred upon it by the Constitution. All other powers are reserved to the states. The Congress is, therefore, empowered to deal with the subject of extradition only when the persons involved are fugitives from the requesting state. The facts in the instant case do not deal with a fugitive from justice. The person sought to be surrendered to the state of New York is a resident of this state who, it is claimed, was a co-conspirator with one who was in the state of New

York and who actually and physically committed the act. There can be no contention that the federal constitutional provision and the supporting legislation preempted the field with regard to the circumstances under which one state may request the surrender of a person then in another state, for the purpose of putting such person on trial for a violation of the penal laws of the requesting state. Section 109-6, General Code, is within the powers reserved to the states and is therefore not in conflict with Section 2, Article IV of the federal Constitution and is a valid exercise of the police power of the state of Ohio.

In 22 American Jurisprudence, 250, Section 9, the following is found: ''A state may also, in the exercise of its reserved sovereign powers and as an act of comity to a sister state, provide by statute for the surrender, on requisition, of persons who are indictable for a crime committed through their constructive presence in such sister state, even though they have never been corporally within such state and have never fled therefrom to escape arrest and punishment, since, in the absence of such statute, such persons are not subject to extradition by the latter state. The Supreme Court of the United States has remarked in this connection that the exercise of jurisdiction by a state to make an act committed without its limits a crime against it is an entirely different proposition from that involved in the assertion that the person committing such act comes under the federal statute and is to be delivered up as a fugitive from the justice of the state in which the crime was committed. A statute of a state authorizing the governor alone to issue a warrant is not repugnant to the act of Congress directing that the demand and surrender of fugitives shall be made by the 'executive authority' of the state.''

In *Ex parte Innes,* 77 Tex. Crim. Rep., 351, 358, 173 S. W., 291, L. R. A. 1916C, 1251, the principle is stated as follows:

"So it may be said that the weight of authority sustains the action of Governor Colquitt in granting the requisition in this case, and his act was not illegal. Again, 19 Cyc., 85, says:

'As the Constitution, however, applies only to fugitives from justice, a state may in the exercise of its reserved sovereign power provide for the surrender of persons indictable for crime in another state, but who have never fled from it.' And this rule is supported by *State* v. *Hall,* 115 N. C., 811, and *In re Mohr,* 73 Ala., 503, and other cases, and we see no reason why such is not a sound proposition of law."

The fourth paragraph of the headnotes contained in 44 American State Reports 501, reporting the case of *State* v. *Hall,* 115 N. C., 811, 20 S. E., 729, 28 L. R. A., 289, reads:

"The state may, in the exercise of its reserved sovereign powers, and as an act of comity to a sister state, provide by statute for the surrender, upon requisition, of persons who are indictable for a crime committed through their constructive presence in such sister state, though they have never been corporally within such state and have never fled therefrom to escape arrest and punishment. But, in the absence of such statute, such persons are not subject to extradition by the latter state."

In the above case, the applicant had discharged a deadly missile while in the state of North Carolina which caused the death of the deceased who was then in the state of Tennessee. The defendant was therefore in no sense a fugitive from justice.

On page 37 of the Handbook on Interstate Crime Control, 3rd Printing, published in April 1940, we

find a clear and concise statement of the power of states to deal with the subject of extradition.

"It must be conceded that state enactments which are inconsistent with the federal rendition law would be unconstitutional. On the other hand, the enactment of the federal rendition law in no way prevented the states from either enacting auxiliary legislation whereby the federal rendition machinery might more easily function or enacting laws which set up a simpler system of interstate rendition, provided that such laws in no way interfere with the duty constitutionally imposed upon asylum states to honor requisitions where certain prerequisites are met by demanding executives. It is submitted that the only instance in which a state law could be regarded as inconsistent with the constitutional provision would be where such state law lessened or detracted from this constitutional duty  If, by compact, two states provided for some simple unconventional procedure for the return of fugitives such compact would not be said to interfere in any way with the duty of the governor of an asylum state to return a fugitive in the event that such fugitive is demanded, as under traditional rendition machinery by the governor of a demanding state. A rule to the effect that food may be passed without command from the head of the table is not inconsistent with a rule that it must be passed when so commanded.

"Again, inasmuch as the Constitution speaks in terms of one who has fled from justice, it is submitted that the states, retaining as they do all powers not granted away and embodied in the United States Constitution, would have the right to set up a procedure for the return of persons who have committed crime in one jurisdiction and are found in another, but who are not strictly 'fugitives from justice' within the mean-

ing of the judicial decisions construing the congressional statute. This argument is well developed by Judge A. H. Reid in an address before the American Bar Association in 1920. (Interstate Extradition for Extra-territorial crimes [1920], 45 A.B.A. Rep., 432, at pages 440-442.)''

We conclude that Section 109-6, General Code, is not in conflict with Section 2 of Article IV of the federal Constitution and is a valid exercise of the police power of the state of Ohio. It was therefore the duty of the Governor of Ohio to grant the requisitions of the Governor of New York requesting the surrender of the applicant when it was made to appear that all procedural prerequisites had been complied with.

*Judgment affirmed.*

LIEGHLEY, P. J., and MORGAN, J., concur.