THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHESTER BUCK, Relator, against ARTHUR D. BRITT, as Sheriff of Erie County, et al., Defendants.

Supreme Court, Special Term, Erie County, May 28, 1946.

*Charles J. McDonough* and *Alfred L. Hetzelt* for relator.

*Leo J. Hagerty, District Attorney (George H. Metz,* of counsel), for defendants.

HINKLEY, J. There is here presented apparently a question of first impression in this State. Relator is imprisoned on a warrant of the Governor of the State charging him as a fugitive from justice from the State of Minnesota. The relator has

never been in the State of Minnesota and could not have fled from that State.

Prior to the enactment of the Uniform Criminal Extradition Act of New York State (Code Crim. Pro., § 827 *et seq.*) it must be conceded that relator could not have been extradited as the demanding State had never had jurisdiction of his person, nor could he have been a fugitive from justice from a State from which he could not have fled. (*People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 176.).

In an endeavor to make more uniform the statutes in the various States, many of the States passed uniform criminal extradition laws. With the passage of such a statute in 1936 (L. 1936, ch. 892) in this State and particularly section 834 of the New York State Uniform Criminal Extradition Act (Code Crim. Pro., § 834), the authority of *People ex rel. Corkran* v. *Hyatt* (172 N. Y. 176, *supra*) no longer was effective. A somewhat similar extradition act was passed by the State of Minnesota.

Testimony was taken upon this hearing. Certain facts are undisputed. Relator until called for armed service had always lived in the city of Buffalo, State of New York. While in the armed service he married a woman in the State of California who at that time was domiciled in that State. They lived together several week ends before he was sent to England in the air force. The wife then moved to Minnesota where a child was born. The relator contributed a portion of his service pay and the government furnished to his wife a monthly allowance attaining the sum of $80 a month. Relator never joined his wife nor was ever within the State of Minnesota. About the early part of this year relator was discharged from service at Camp Dix and immediately returned to his home in Buffalo, New York. Thereupon, his governmental allotment to his wife and child ceased. While negotiations were pending, looking for contributions by relator to the support of his wife and child, proceedings were commenced in a municipal court in the State of Minnesota charging relator with abandonment. As the result of those proceedings, the Governor of this State has issued his warrant for the return of relator to the State of Minnesota.

Obviously the relator has never abandoned his wife and child in the State of Minnesota or anywhere. The domicile of the relator always has been and still is the city of Buffalo, State of New York. By compulsory service relator did not lose his domicile. That has been the law of this State since the Civil War. (*Tibbitts* v. *Townsend,* 15 Abb. Prac. 221.) Nor can it

be claimed that he lost his domicile by marrying in California, for then he was by virtue of the draft or enlistment living in a camp in that State. A woman by marriage takes the domicile of her husband by operation of law and the legal domicile of the wife is prima facie that of the husband. (*Matter of Daggett*, 255 N. Y. 243, 246.)

This decision calls for an interpretation of section 834 of the Criminal Extradition Act: "*Extradition of persons not present in demanding State at time of commission of crime*. The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section eight hundred and thirty with committing an act in this state or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, when the acts for which extradition is sought would be punishable by the laws of this state, if the consequences claimed to have resulted therefrom in the demanding state had taken effect in this state; and the provisions of this title, not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom * * *."

Surely section 834 of the Uniform Criminal Extradition Act of New York needs judicial interpretation. In *Culbertson* v. *Sweeney* (44 N. E. 2d 807 [Ohio]) a somewhat similar statute has been limited to an alleged fugitive from justice whose participation in the claimed criminal act was as a coconspirator or aider or abettor or when such person committed such criminal act through an innocent human agent or by means of an inanimate object.

The Legislature has given to the executive of this State broad powers, even the discretionary power of extradition when the accused was not in the demanding State at the time of the commission of the crime and had not fled therefrom. Yet those discretionary powers are clearly limited under that section to grant extradition only if the relator has committed an act in this State or a third State intentionally resulting in a crime in the State whose executive authority is making the demand and when the acts for which extradition is sought would be punishable by the laws of this State if the consequences claimed to have resulted therefrom in the demanding State had taken effect in this State. Here it could not be claimed that relator has committed in this State or any third State any act which intentionally resulted in a crime in the State of Minnesota. While

abandonment would be punishable by the laws of this State, still the consequences claimed to have resulted in Minnesota could not have taken effect in this State where relator resides.

The court in Minnesota had no jurisdiction of the person of relator nor can it be said that relator committed any crime in that State nor that extradition could properly be granted by the executive of this State.

Writ of habeas corpus granted and relator ordered released.