[Crim. No. 4248. Second Dist., Div. Two. June 15, 1948.]

In re THOMAS B. MORGAN, on Habeas Corpus.

Richard A. Haley for Petitioner.

Ray L. Chesebro, City Attorney (Los Angeles), Donald M.

Redwine, Assistant City Attorney, John L. Bland and Philip E. Grey, Deputy City Attorneys, for Respondent.

WILSON, J.—Petitioner was charged by verified complaint and information filed in the Justice's Court of the City and County of Denver, State of Colorado, with a felony in that on or about March 1, 1948, in the city of Los Angeles, State of California, he unlawfully conspired with three other persons named in the information to aid in the commission of the crime of grand larceny, a felony, in the city and county of Denver, and which conspiracy intentionally resulted in the commission of such crime on the 13th day of March, 1948. Upon requisition of the Governor of Colorado a warrant was issued by the Governor of California pursuant to section 1549.1 of the Penal Code for petitioner's arrest for the purpose of his extradition to Colorado. By reason of such warrant he was placed under arrest and detained by the respondent Chief of Police of the city of Los Angeles.

Petitioner seeks his release on a writ of habeas corpus contending that his arrest and detention are unlawful in that section 1549.1 is in conflict with the Constitution and laws of the United States.

Petitioner maintains that the only authority for the extradition from one state to another of a person charged with a crime is clause 2 of section 2, article IV of the Constitution of the United States which reads as follows: ''A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up, to be· removed to the State having jurisdiction of the crime.'' He contends further that section 5278 of the Revised Statutes (18 U.S.C.A. § 662), implementing the constitutional provision, furnishes the only statutory authority for extradition. That section provides that whenever the executive authority of any state demands any person, as a fugitive from justice, of the executive authority of any state to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state, charging the person demanded with having committed a crime, certified as authentic by the governor of the state from whence the person so charged has fled, it shall be the duty of the executive authority of the state to which such person has fled to cause him to be arrested and to cause the

fugitive to be delivered to the agent of the demanding state.

Petitioner asserts, and respondent admits, that he was not in the State of Colorado on the date the crime was committed. He contends that since he was not in the State of Colorado he could not have fled and did not flee therefrom and was not a fugitive from justice; consequently, he argues, the effort to extradite him to Colorado for the purpose of prosecution for the conspiracy alleged to have been entered into in California must fail and he is entitled to his release from custody.

The Uniform Criminal Extradition Act has been adopted in more than 30 states. Section 1549.1 of the Penal Code is a part of the Uniform Act. It was enacted in 1937 (Stats. 1937, ch. 554, p. 1581) and reads as follows: ''The Governor of this State may also surrender, on demand of the executive authority of any other State, any person in this State charged in such other State in the manner provided in section 1548.2 of this code with committing an act in this State, or in a third State, intentionally resulting in a crime in the State whose executive authority is making the demand. The provisions of this chapter, not otherwise inconsistent, shall apply to such cases, even though the accused was not in the demanding State at the time of the commission of the crime, and has not fled therefrom. Neither the demand, the oath, nor any proceedings under this chapter pursuant to this section need state or show that the accused has fled from justice from, or at the time of the commission of the crime was in, the demanding or other State.''

Petitioner's contention that the Penal Code provision pursuant to which he is now in custody is unconstitutional is the same as that which has been asserted in other states in reference to the Uniform Criminal Extradition Act and has been consistently rejected. (*Cassis* v. *Fair,* 126 W.Va. 557 [29 S.E.2d 245, 248, 151 A.L.R. 233]; *Ennist* v. *Baden,* 158 Fla. 141 [28 So.2d 160, 162]; *English* v. *Matowitz,* 148 Ohio 39 [72 N.E.2d 898, 900]; *Ex parte Campbell,* 147 Neb. 820 [25 N.W. 2d 419, 423]; *Culbertson* v. *Sweeney,* 70 Ohio App. 344 [44 N.E.2d 807, 810]; appeal dismissed, 140 Ohio St. 426 [45 N.E.2d 118], ''for the reason that no debatable constitutional question is involved.'')

The cases cited by petitioner to the effect that a person cannot be deemed to have fled from a state which he has never entered and is not a fugitive from a state unless he has been

in that state and has participated in a crime therein need not be discussed since such cases were all decided under the federal statute mentioned above and refer to a person who was in reality a fugitive from the state in which the crime had been committed and to one who had actually fled therefrom. Section 1549.1 of the Penal Code and the Uniform Criminal Extradition Act, of which it is a part, extend the power of extradition beyond that contained in the federal statute. Petitioner maintains that the constitutional provision above quoted is an inhibition on the power of the states so to do.

". . . the validity of state legislation ancillary to, and in aid of, the act of Congress in regard to interstate extradition is now well established. Moreover, while state legislation impairing the full operation of the Constitution and laws of Congress would be void, yet a state may enact laws on the subject of interstate extradition at a stage prior to that which the Constitution and Federal laws have designated as the time at which they take cognizance of it . . . provided that such enactments are not inconsistent with the end named in the Constitution. A state may also, in the exercise of its reserved sovereign powers and as an act of comity to a sister state, provide by statute for the surrender, on requisition, of persons who are indictable for a crime committed through their constructive presence in such sister state, even though they have never been corporally within such state and have never fled therefrom to escape arrest and punishment, since, in the absence of such statute, such persons are not subject to extradition by the latter state. . . . While it has been declared that state laws cannot make any requirements further than those made by the act of Congress, yet the laws of a state may require the governor to surrender a fugitive on terms less exacting than those imposed by the act of Congress, and also that the states may provide for cases not provided for by the United States." (22 Am.Jur. 249, 250.) The foregoing is quoted in part with approval in *Culbertson* v. *Sweeney* and *Ennist* v. *Baden, supra.*

In the Cassis case, after referring to the quoted clause of the Constitution, the court said, at page 248: "It in no sense purports to limit extradition to these cases. It does not forbid a state to yield up to another state one charged with crime but who has not in fact fled from that other state. No reason in law, expediency or comity has been suggested why extradition should be limited to those who were physically in the

state at the time the crime was committed. Many crimes may be committed in a state while the culprit remains without its borders. This is particularly true where such offender acts through an agent or a conspirator." In *English* v. *Matowitz, supra,* the court said: "The federal enactments relating to extradition do not expressly or impliedly cover a situation such as that presented in the case at bar, and, since they do not, it would seem that there is no conflict between the federal and state enactments and that the latter merely supplement the former. It is to be observed that there are no negative provisions in the U. S. Constitution or federal legislation forbidding the extradition of one not physically present at the scene of crime in the demanding state."

The Uniform Act for Out-of-State Parolee Supervision is analogous to the Uniform Criminal Extradition Act in that it provides for the return of a parolee to the state in which he was paroled without the necessity of following the legal requirements for the extradition of fugitives from justice. The validity of that statute was sustained in *In re Tenner,* 20 Cal.2d 670 [128 P.2d 338], wherein the court held that the act does not deprive the petitioner of his liberty without due process of law in violation of the Fourteenth Amendment and is not in conflict with clause 2 of section 2 of article IV of the United States Constitution or with the federal extradition act. In the Tenner case the court said, on page 677, "As authority to require the return of fugitives originally existed in the states and remains there except as expressly limited by the Constitution, even in the field of federal extradition, the act of Congress is not exclusive of state action which does not come within its express terms. On the contrary, said the Supreme Court of the United States, it must have been intended to leave subjects within the constitutional power and not provided for by that statute subject to the state authority which then controlled them."

*In re Davis,* 68 Cal.App.2d 798 [158 P.2d 36] and *In re Brewer,* 61 Cal.App.2d 388 [143 P.2d 33] are cited by petitioner but they furnish no aid to his contention. In the Davis case, a proceeding in which section 1548.2 of the Penal Code, also a part of the Uniform Criminal Extradition Act, was involved, the court rejected the contention of the petitioner that the federal Constitution and statute supersedes all state legislation on the subject of extradition. (P. 802.) In the

Brewer case the demand for extradition and the warrant were totally devoid of any showing that the petitioner was present in the demanding state when the crime was committed or that he committed an act in another state intentionally resulting in a crime in the demanding state. In the Davis case, *supra,* the court said (p. 807) that section 1548.2 of the Penal Code is not inconsistent with section 2 of article IV of the Constitution of the United States and that the federal statute (18 U.S.C.A. § 662) does not ''purport to exclude legislation by the state in *aid* of the purposes of the constitutional provision, which are not for the benefit of an alleged fugitive, but to secure his presence for trial in the courts of the state where he is charged with crime.''

Petitioner concedes in his brief that ''state legislation in aid of the federal Constitution is valid and proper.'' The courts have so held. An act of Congress, if it is upon a subject concerning which it is authorized by the Constitution to legislate, is exclusive as to the matters for which it expressly or by necessary implication provides, but if it does not occupy the whole field it does not preclude the states from enacting legislation to regulate situations not covered by such statute. ''The reasonable assumption is that by the omission to extend the statute to the full limits of constitutional power it must have been intended to leave the subjects unprovided for not beyond the pale of all law, but subject to the power which then controlled them,—state authority until it was deemed essential by further legislation to govern them exclusively by national authority.'' (*Innes* v. *Tobin,* 240 U.S. 127, 135 [36 S.Ct. 290, 60 L.Ed. 562, 566].)

Statutes adopted by the states are not necessarily invalid if they cover a field in which the Constitution empowers Congress to legislate. The regulation of interstate commerce is a matter exclusively within the power of Congress (Const., art. I, § 8, cl. 3) if and when it chooses to act, but if there is no federal statute covering a particular subject a state law is not invalid because it may in some manner affect commerce between the states, although such a law would become inoperative upon the adoption of a federal statute covering the same field as that embraced by the state legislation. A state law does not conflict with federal statutes if it does not impede the execution of the will and purpose of Congress (*Cloverleaf Butter Co.* v. *Patterson,* 315 U.S. 148, 157 [62 S.Ct. 491, 86 L.Ed. 754, 763]) or if it does not cast an undue burden upon

interstate commerce (*Nippert* v. *Richmond,* 327 U.S. 416, 425 [66 S.Ct. 586, 90 L.Ed. 760, 765, 162 A.L.R. 844]) or if its effect on such commerce is only incidental or indirect. (*California* v. *Thompson,* 313 U.S. 109, 113 [61 S.Ct. 930, 85 L.Ed. 1219, 1221].)

If a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in reference to matters on which it is empowered by the Constitution to legislate the former must yield to the superior force of the latter. (*Hines* v. *Davidowitz,* 312 U.S. 52, 67 [61 S.Ct. 399, 85 L.Ed. 581, 587].)

The statute in question in this proceeding is not an obstacle to the purposes of the federal extradition act. In *In re Tenner,* 20 Cal.2d 670, 675 [128 P.2d 338], the court said: "The validity of legislation in aid of the act of Congress concerning extradition is now well established (citing cases) and it has been held that a state may legislate upon a subject of extradition unprovided for because Congress failed to extend section 5278 of the Revised Statutes to the full limits of constitutional power. (*Innes* v. *Tobin,* 240 U.S. 127 [36 S.Ct. 290, 60 L.Ed. 562].)"

The Constitution refers only to persons "who shall *flee* from justice" and provides for their surrender to the state from which they "*fled.*" Since Congress may legislate only on the subjects expressly authorized by the Constitution, and since a person cannot flee from a state unless he has been there, its power to provide for the extradition of a person who becomes a party to a conspiracy in one state to commit a crime in a sister state and never enters the latter may be questioned. However, if its power in that respect be conceded it has not undertaken to exercise it. The federal statute (18 U.S.C.A. § 662) does not purport to cover the entire field of extradition. It mentions only one class of persons—those who flee from the state in which the crime was committed and who are fugitives from justice. The Uniform Criminal Extradition Act does not provide for the extradition of persons of that class but covers persons in an entirely different category—those who commit an act in one state intentionally resulting in a crime in another state. Since each statute refers to a subject different and distinct from the other there is no conflict and each is enforceable in its own sphere.

■ Petitioner urged in the oral argument that section 1549.1 is inapplicable to him and to the crime with which he

is charged in Colorado unless that state has adopted a similar statute. There is nothing in the Uniform Criminal Extradition Act that requires reciprocity between the states in such a matter. The statute is not comparable in this respect to the Uniform Out-of-State Parolee Act discussed in *In re Tenner, supra*. The latter statute provides for the return of a parolee without the formality of extradition to the state in which he was paroled and it requires reciprocal action by other states. This Uniform Act constitutes a compact among the states that become parties thereto by adopting it, and it has the approval of Congress. (Const., art. I, § 10, cl. 3; 48 Stats. 909, 18 U.S.C.A. (1947 Supp.) § 420.) The Extradition Act is enforceable within any state that adopts it whether or not the state requisitioning a person charged with crime has a similar statute.

In petitioner's application for a writ of habeas corpus it is alleged that the papers submitted to the governor of this state were insufficient to justify his extradition to Colorado. Since this point was not urged in the briefs or in the oral argument it will be deemed to have been abandoned. Nevertheless we have carefully examined the documents filed with the governor, the same having been submitted to the court with respondent's return to the writ, and find that they are regular and sufficient in all respects.

The point raised by petitioner that he is not subject to prosecution in Colorado is without merit. He is charged by a complaint and information in that state with having unlawfully and feloniously conspired with three other persons to aid in the commission of an unlawful act in the State of Colorado, to wit, grand larceny, a felony, which conspiracy intentionally resulted in the commission of such felony in the city and county of Denver, Colorado. Section 13 of chapter 48 of volume II of 1935 Colorado Statutes Annotated provides that an accessory is one who, not being present, has advised and encouraged the perpetration of a crime and that such person shall be deemed as principal and punished accordingly. Section 177 of the same chapter provides that if two or more persons shall agree, conspire or cooperate to do or to aid in doing any unlawful act each such person, in case of a conspiracy to commit a felony, shall be confined in a penitentiary. In Colorado it has been held that an accessory may be charged as a principal. (*Bacino* v. *People*, 104 Colo. 229 [90 P.2d 5, 9] ; *Mulligan* v. *People*, 68 Colo. 17 [189 P. 5, 8].)

The Colorado court has also held that a crime may be perpetrated by a person who has never entered the state, and that he may be convicted of such crime. (*Newton* v. *People,* 96 Colo. 246 [41 P.2d 300, 302] ; *Updike* v. *People,* 92 Colo. 125 [18 P.2d 472, 474].) In order to charge one as an aider or abettor or as a conspirator in crime his presence at the scene of the crime is unnecessary. Constructive presence is sufficient. (*English* v. *Matowitz,* 148 Ohio 39 [72 N.E.2d 898, 900] ; *Hyde* v. *United States,* 225 U.S. 347, 363 [32 S.Ct. 793, 56 L.Ed. 1114, 1124] ; *Commonwealth* v. *Hollister,* 157 Pa. 13 [27 A. 386, 395, 25 L.R.A. 349] ; 11 Am.Jur. ''Conspiracy,'' § 23, p. 559.) The actual presence of the defendant within the state at the time of the commission of the crime with which he is charged is not a prerequisite to his conviction. (*State* v. *Wolkow,* 110 Kan. 722 [205 P. 639, 642, 42 A.L.R. 265].)

The writ of habeas corpus is discharged and petitioner is remanded to custody.

Moore, P. J., and McComb, J., concurred.