**Robert Earl MILLER, Plaintiff-Appellant,**

v.

**J. E. "Bill" DECKER, Defendant-Appellee.**

**No. 26300.**

United States Court of Appeals Fifth Circuit.

May 2, 1969.

Mike Barclay, Dallas, Tex., for appellant.

Henry Wade, Dist. Atty., Malcolm Dade, Dallas, Tex., for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

CASSIBRY, District Judge:

This is an appeal from an order of the District Court denying Robert Earl Miller's application for writ of habeas corpus which asserted the invalidity of the proceeding to extradite him from the State of Texas to the State of California. We affirm.

Appellant Miller contends that the extradition proceeding against him is unlawful because he was not in California, the demanding state, at the time he was alleged to have violated Section 270 of the California Penal Code by failing to make support payments for his minor children and he therefore was not a fugitive from justice and was not subject to extradition under the Constitution and laws of the United States. Appellee J. E. "Bill" Decker, Sheriff of Dallas County, Texas, contends that the extradition proceeding was lawful under state statutes permitting extradition of accused persons not in the demanding state at the time of the commission of the alleged offense.

The issue in the case is whether Article IV, Section 2 of the Constitution of the United States and the federal implementing legislation impliedly prohibit a state from enacting legislation permitting the extradition of a person not

within the demanding state at the time the alleged offense occurred.

Appellant was divorced from his wife in San Diego County, California and ordered to make support payments to his former wife and their children. Until he left California in March 1963 he was current in his payments, but since that time he has become delinquent. The State of California charged him with violating Section 270 of the California Penal Code for his failure to make the support payments for his minor children and initiated extradition proceedings against him in Texas. The Governor of Texas issued his warrant for the extradition of appellant on March 30, 1967 and the appellant was thereafter arrested in Dallas County.

On April 10 appellant applied for a writ of habeas corpus in the state court, Criminal District Court Number 5 of Dallas County, Texas. That court denied the application on May 1 and remanded the appellant to the custody of the appellee. The Court of Criminal Appeals of Texas affirmed that order in December and the appellant initiated the present habeas corpus proceeding in the United States District Court for the Northern District of Texas on January 17, 1968.

The Constitution of the United States, Article IV, Section 2, Clause 2 provides:

"A person charged in any State with Treason, Felony, or other crime, who shall flee from Justice, and be found in another State, shall on Demand of the Executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

The statute which implements the constitutional provision, Title 18, § 3182, U.S.C. (1948) is to the effect that whenever the executive authority of any state demands any person, as a fugitive from justice, of the executive authority of any state to which such person has fled, and produces properly authenticated documents charging the person demanded with having committed a crime, it shall be the duty of the executive authority of the state to which such person has fled to cause him to be arrested and to cause him to be delivered to the agent of the demanding state.

Appellant relies on the cases of Hyatt v. People of State of New York ex rel. Corkran, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 (1903); Fowler v. Ross, 90 U.S.App.D.C. 305, 196 F.2d 25 (1952); and Moncrief v. Anderson, 119 U.S.App. D.C. 323, 342 F.2d 902 (D.C. Cir. 1964) which recognize that the Constitution and the implementing legislation authorize extradition only when the one charged with crime is a fugitive from the demanding state and he is a fugitive only if he was in the demanding state at the time of the alleged crime.

The appellee does not argue that extradition of the appellant was authorized by the federal statute or the Constitution, but contends that it was authorized by valid state legislation enacted in an area outside the scope of the Constitution and within the reserved power of the State. The Uniform Reciprocal Enforcement of Support Act, which has been adopted by Texas and forty-six other states, Guam, District of Columbia, Puerto Rico, and the Virgin Islands,[1] permits extradition when the accused is not in the demanding state at the time of the commission of the crime and has not fled therefrom. The pertinent provision appears in Texas Civil Statutes, Art. 2328b–4, Sec. 5 [2] and a comparable

1. 9C U.L.A. 9, 38 (1967 P.P.)

2. "The Governor of this State (1) may demand from the Governor of any other state the surrender of any person found in such other state who is charged in this State with the crime of failing to provide for the support of any person in this State and (2) may surrender on demand by the Governor of any other state any person found in this State who is charged in such other state with the crime of failing to provide for the support of any person in such other state. The provisions for extradition of criminals not inconsistent herewith shall apply to any such demand although the per-

provision of the Uniform Criminal Extradition Act, which has been adopted by forty-two states, the Panama Canal Zone and the Virgin Islands,[3] appears in Texas C.C.P. Art. 51.13, Sec. 6.[4]

State courts in Texas have held both provisions to be constitutional,[5] and the states regard it as well settled that the federal constitutional and statutory provisions are not exclusive and that the states are free to cooperate with one another by enacting such legislation to extend interstate rendition beyond that authorized by federal law.[6]

The cases relied on by appellant, cited heretofore, did not involve state legislation permitting extradition when the person charged was not in the demanding state at the time of the alleged offense and they may be regarded only as recognizing the limitations of the extent and scope of the federal constitutional and statutory provision and not as determining the states' power to enact legislation supplementary to the Constitution and federal statute.

A Federal court in the case of Morgan v. Horrall, 175 F.2d 404 (9th Cir. 1949), however, did have before it the same issue as is presented here. Morgan contended in a habeas corpus proceeding that, among other reasons, his extradition from California to Colorado was unlawful because that part of the Uniform Criminal Extradition Act adopted by California allowing his extradition when he was not in the demanding state at the time of his alleged offense was repugnant to Article IV, Section 2, Clause 2 of the United States Constitution and the federal implementing legislation. Morgan had previously sought his release by writ of habeas corpus in the state courts and his constitutional arguments were rejected there. Ex parte Morgan, 86 Cal.App.2d 217, 194 P.2d 800 (review refused by Supreme Court of California). The Court of Appeals for the Ninth Circuit held that he had made no showing of a violation of his rights under the Constitution to cause the Court to disturb the state courts' interpretation of the meaning and applicability of the California statute. In its full consideration of the federal constitutional issue presented, the California District Court of Appeal had concluded that the state statute applied outside the sphere of the federal statute, was not inconsist-

---

son whose surrender is demanded was not in the demanding state at the time of the commission of the crime and although he had not fled therefrom. Neither the demand, the oath nor any proceedings for extradition pursuant to this section need state or show that the person whose surrender is demanded has fled from justice, or at the time of the commission of the crime was in the demanding or other state."

3. 9 U.L.A. 143 (1967 P.P.)

4. "The Governor of this State may also surrender, on demand of the Executive Authority of any other State, any person in this State charged in such other State in the manner provided in Section 3 with committing an act in this State, or in a third State, intentionally resulting in a crime in the State whose Executive Authority is making the demand, and the provisions of this Article not otherwise inconsistent, shall apply to such cases, even though the accused was not in that State at the time of ·the commission

of the crime, and has not fled therefrom."

5. Ex parte Coleman, 157 Tex.Cr.App. 37, 245 S.W.2d 712; Ex parte Peairs, 162 Tex.Cr.App. 243, 283 S.W.2d 755, appeal dismissed 350 U.S. 858, 76 S.Ct. 104, 100 L.Ed. 762 for lack of a substantial federal question.

6. Harrison v. State, 38 Ala.App. 60, 77 So.2d 384; Lindley v. Crider, 223 Ark. 200, 265 S.W.2d 498; Ex parte Morgan, 86 Cal.App.2d 217, 194 P.2d 800; In re Cooper, 53 Cal.2d 772, 3 Cal.Rptr. 140, 349 P.2d 956; Ennist v. Baden, 158 Fla. 141, 28 So.2d 160; Clayton v. Wichael, 258 Iowa 1037, 141 N.W.2d 538; State ex rel. Gildar v. Kriss, 191 Md. 568, 62 A.2d 568; Ex parte Dalton, 56 N.M. 407, 244 P.2d 790; People ex rel. Faulds v. Herberich, 276 App.Div. 852, 93 N.Y.S.2d 272, aff'd 301 N.Y. 614, 93 N.E.2d 913; Culbertson v. Sweeney, 70 Ohio App. 344, 44 N.E.2d 807; English v. Matowitz, 148 Ohio St. 39, 72 N.E.2d 898; Ex parte Bledsoe, 93 Okl.Cr. 302, 227 P.2d 680.

ent with it or an obstacle to the accomplishment of its purposes, and that the Federal Constitution and statute neither expressly nor impliedly prohibited the legislation by the state providing for extradition of persons not in the demanding state at the time of the alleged offense.[7]

The decision in Morgan v. Horrall is consistent with the spirit and purpose of the Constitutional provision as recognized by the Supreme Court of the United States in Ex parte Commonwealth of Kentucky v. Dennison, 24 How. 66, 16 L.Ed. 717 (1861) in an opinion reviewing the clause's history and its reason for being in the Constitution. The purpose of the provision was not to restrict interstate extradition, but to promote it by avoiding having the surrender by the states of fugitives from justice a matter of discretionary comity; not to render the states powerless to surrender persons wanted for criminal prosecution in other states, but to compel them to surrender such persons.[8]

The interests of federalism demanded that the states relinquish the exercise of their sovereign power to withhold the surrender of a fugitive from justice. To prevent the failure of this complex government the states had to give aid and assistance to each other in executing their laws, and to support each other in preserving order and law within its confines, whenever such aid was needed and required, and the framers realized that "nothing would be more likely to disturb its peace, and end in discord, than per-

mitting an offender against the laws of a state, by passing over a mathematical line which divides it from another, to defy its process, and stand ready, under the protection of the state, to repeat the offense as soon as another opportunity offered." Ex parte Commonwealth of Kentucky v. Dennison, *supra.*

The Court viewed the clause as a compact morally binding the states to deliver a fugitive upon demand of the state charging him with crime and from which he has fled. The compelling necessity for the clause caused it to be drafted in strong, commanding language implying that the right to "demand" is an absolute right and the correlative obligation to "deliver" is an absolute duty.

We consider that the Constitutional right to demand the surrender of a fugitive is not made any less absolute and the obligation to deliver is not made any less compelling by the states' retention of their sovereignty to provide for the extradition of non-fugitives within their discretion. Neither Article IV, Section 2, Clause 2, nor the federal statute expressly negate the power of the states to provide for the extradition of persons who are not fugitives in the technical sense. The history of and the reason for the clause afford no basis for an interpretation that the states impliedly relinquished their sovereignty in all extradition matters outside the sphere of the clause, and no reason has been advanced to us which would support or compel such an interpretation.[9]

7. 194 P.2d 800. The Supreme Court denied certiorari in the case from the Ninth Circuit. 338 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503.

8. Appellant purposes to use the provision to shield him from extradition. He argues that it does not authorize the extradition of non-fugitives and that it impliedly denies the states the power to provide for their extradition. The clause was never intended to benefit interstate criminals who are non-fugitives by conferring upon them immunity from extradition. See Mahon v. Justice, 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283 (1888) to the effect that there is no constitutional right of asylum.

9. There are decisions which contain dicta stating that the power to legislate upon the subject of extradition lies exclusively with the federal government. Prigg v. Commonwealth, 16 Pet. 539, 41 U.S. 539, 10 L.Ed. 1060 (1842); Ex parte Reggel, 114 U.S. 642, 5 S.Ct. 1148, 29 L.Ed. 250 (1885); Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885); Hyatt v. People ex rel. Corkran, supra; cf. Innes v. Tobin, 240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562 (1916) recognizing the authority of a state to act in an extradition matter beyond the purview of the federal statute.

The administration of criminal justice is served by a construction which would not restrict the states in their efforts to cooperate with each other in this area. The fallacy of implying from Article IV, Section 2, which compels the delivering up of fugitives from justice, a denial of the states' power to fashion other cooperative arrangements for the administration of justice was pointed out by the Supreme Court of the United States in People of the State of New York v. O'Neill, 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed. 2d 585, wherein the Court upheld the validity of Florida's statute entitled "Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings". Fla. Stat.1957, §§ 942.01–942.06, F.S.A. The Court observed:

" * * * In adjudging the validity of a statute effecting a new form of relationship between States, the search is not for a specific constitutional authorization for it. Rather, according the statute the full benefit of the presumption of constitutionality which is the postulate of constitutional adjudication, we must find clear incompatibility with the United States Constitution. The range of state power is not defined and delimited by an enumeration of legislative subject-matter. The Constitution did not purport to exhaust imagination and resourcefulness in devising fruitful interstate relationships. It is not to be construed to limit the variety of arrangements which are possible through the voluntary and cooperative actions of individual States with a view to increasing harmony within the federalism created by the Constitution. Far from being divisive, this legislation is a catalyst of cohesion. It is within the unrestricted area of action left to the States by the Constitution."

We are of the opinion that it would be equally fallacious to imply from Article IV, Section 2 a denial of the states' power to legislate for the delivering up of offenders who are non-fugitives.

Affirmed.