JOHNSON *v*. BURKE, DEPUTY SHERIFF, ETC.

[No. 29,483.  Filed March 10, 1958.]

1

*John G. Bunner,* of Evansvills, for appellant.

*William D. Stephens,* of Evansville, for appellee.

LANDIS, J.—This case involves the constitutionality of the Uniform Criminal Extradition Act which is ch. 49, §§1-30 of the Acts of 1935.[1]

In the lower court appellant filed petition for writ of habeas corpus. Return was filed by appellee-sheriff alleging appellant was arrested pursuant to a warrant of the Governor of the State of Indiana issued in extradition proceedings initiated by the State of Arizona, the demanding state. Appellant filed affirmative answer to the return to the writ.

At the hearing of said cause appellant attempted to show by his testimony that he was not in the State of Arizona on the date the offense was allegedly committed, to-wit: February 15, 1955, and that he had not been in Arizona since the year 1951; that he had not fled from the State of Arizona or any other state, and that at the time of the alleged offense was in the

---

1. Burns' Indiana Statutes, § 9-419 et seq., 1956 Replacement.

State of Indiana. Appellee objected to the introduction of this evidence and the objection was sustained.

The court denied the petition for writ of habeas corpus and overruled appellant's motion for new trial.

The question on this appeal according to appellant's brief is whether, in a habeas corpus proceeding to test the validity of an arrest and detention made by virtue of a Governor's extradition warrant, the petitioner may offer evidence to prove that he was not in the demanding state at the time of the alleged offense.

Appellee relies on §20 of the Uniform Extradition Act (Acts of 1935, ch. 49, §20, being Burns' §9-438, 1956 Replacement) which provides in substance:

> "The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

Appellant concedes that this court in *Taylor* v. *Smith* (1939), 213 Ind. 640, 13 N. E. 2d 954, construed the quoted portion of the above statute to limit the evidence in habeas corpus brought thereunder to the question of identity only.

Appellant does not urge that the *Taylor* case, which limited the evidence to the question of appellant's identity, is too broad a construction of the statute,[2]

---

2. Although "the guilt or innocence of the accused . . . may not be inquired into" under §20 of the Uniform Extradition Act, it might be questioned that the language of such section prohibits the accused from showing he was not in the demanding state and did not flee therefrom, unless the same dealt with the guilt or innocence of the accused. However, the presence of the accused in the demanding state or his fleeing therefrom is believed immaterial in the instant case, as appellant was charged with non-support, and §5 of the Uniform Reciprocal Enforcement of Sup-

but contends solely that the construction of the Uniform Extradition Act by the *Taylor* case violates the Federal (Art. 4, §2, cl. 2, and 14th Amendment) and State (Art. 1, §12, and Art. 1, §27) Constitutions. We shall now consider these contentions.

Art. 4, §2, cl. 2 of the U. S. Constitution provides:

> "A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

The Act of Congress (1948), ch. 645, 62 Stat. 822 (Title 18, U. S. C. A., §3182), implementing such constitutional provision provides:

> "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the

port Act (Acts 1951, ch. 224, §5, p. 640, being Burns' §3-3105, 1957 Cum. Supp.) provides: "The provisions for extradition of criminals not inconsistent herewith shall apply to any such demand [by the governor of another state for any person within this state for the nonsupport of a person in the demanding state] although the person whose surrender is demanded was not in the demanding state at the time of the commission of the crime and although he had not fled therefrom. Neither the demand, the oath nor any proceedings for extradition pursuant to this section need state or show that the person whose surrender is demanded has fled from justice, or at the time of the commission of the crime was in the demanding or the other state."

agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

Appellant has cited decisions of the U. S. Supreme Court to the effect that under the above quoted federal constitutional provision and statute, a person held by extradition proceedings may in habeas corpus show that he was not in the demanding state when the alleged offense was committed, and that if he so proves, he is entitled to be discharged. See: *Hyatt* v. *Corkran* (1903), 188 U. S. 691, 47 L. Ed. 657, 23 S. Ct. 456; *South Carolina* v. *Bailey* (1933), 289 U. S. 412, 77 L. Ed. 1292, 53 S. Ct. 667; *Innes* v. *Tobin* (1916), 240 U. S. 127, 60 L. Ed. 562, 36 S. Ct. 290; *Robb* v. *Connolly* (1884), 111 U. S. 624, 28 L. Ed. 542, 4 S. Ct. 544; 22 Am. Jur. (Extradition), §54, p. 293.

Are these decisions decisive of the question before us in the case at bar? An examination of these cases reveals that they involved solely the application of Art. 4, §2 of the U. S. Constitution and the implementing statute, and did not attempt to consider the question of whether a state may by appropriate legislation enlarge the scope of extradition beyond that provided for under federal law.[3] It is therefore not surprising in these federal decisions where the demanding state based its sole right to the custody of

---

3. See: *Strassheim* v. *Daily* (1911), 221 U. S. 280, 285, 31 S. Ct. 558, 560, 55 L. Ed. 735, 738, where Mr. Justice Holmes, speaking for the court said: "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."

See also: *Hyde* v. *United States* (1912), 225 U. S. 347, 362-366, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; *King* v. *United States* (1944), 8 Cir., 144 F. 2d 729, 731.

the prisoner upon the Federal Constitution and statute, that extradition should have been denied. Nor can there be any question as to the correctness of the statement of the U. S. Supreme Court in *South Carolina* v. *Bailey* (1933), *supra* (289 U. S. at p. 420, 77 L. Ed. at p. 1296, 53 S. Ct. at p. 670), that "it was the duty of [the state] court to administer the law prescribed by the Constitution and statute of the United States, as construed by this Court." In the case before us, however, the extradition warrant of the Governor of Indiana recites that the proceeding is "in accordance with the requirements of the Constitution and laws of the United States *and of the State of Indiana.*" (Emphasis supplied.) And it is therefore apparent that if the extradition proceedings are authorized under state law and do not offend federal law, such proceedings will be sustained.[4]

The case of *Innes* v. *Tobin* (1916), *supra,* relied on by appellant, while recognizing that a person extradited within the purview of Art. 4, §2 of the U. S. Constitution and the implementing federal statute, must have been a fugitive from the demanding state, nevertheless held that the failure of the implementing federal statute to provide for the extradition of fugitives who did not flee *into the asylum state,* was not fatal to extradition from such asylum state. (Here the fugitive had fled from Georgia to Oregon, and after being extradited from Oregon to

4. See: *People* v. *O'Brien* (1950), 197 Misc. 1019, 96 N. Y. S. 2d 401, in which it was held the allegation defendant was a fugitive from the demanding state (required under federal law) should be regarded as surplusage in a proceeding under the Uniform Criminal Extradition Act.

The Colorado case cited by appellant (*Stobie* v. *Barger* (1954), 129 Colo. 222, 268 P. 2d 409) is not believed applicable to the case before us as the Governor's extradition warrant recited as his sole authority therefor "the provisions of the Constitution and laws of the U. S.," which unquestionably require proof that accused fled from the demanding state.

Texas for a charge of murder, resulting in an acquittal, was being extradited from Texas to Georgia.) The U. S. Supreme Court in an opinion by Chief Justice White dismissed the argument that the federal statute which had failed to make provision for extradition in such circumstances was exclusive and prohibited state action, by saying (240 U. S. at p. 134, 60 L. Ed. at p. 566, 36 S. Ct. at p. 292):

". . . while it is undoubtedly true that in the decided cases relied upon (*Kentucky* v. *Dennison, supra* [24 How. 66, 16 L. Ed. 717]; *Roberts* v. *Reilly, supra,* 116 U. S. 80, 29 L. Ed. 544, 6 Sup. Ct. Rep. 291; *Hyatt* v. *Corkran, supra,* 188 U. S. 691, 47 L. Ed. 657, 23 Sup. Ct. Rep. 456, 12 Am. Crim. Rep. 311) the exclusive character of the legislation embodied in the statute was recognized, those cases, when rightly considered, go no further than to establish the exclusion by the statute of all state action from the matters for which the statute expressly or by necessary implication provided.

"No reason is suggested nor have we been able to discover any, to sustain the assumption that the framers of the statute, in not making its provisions exactly coterminous with the power granted by the Constitution, did so for the purpose of leaving the subject, so far as unprovided for, beyond the operation of any legal authority whatever, *state or national.* On the contrary, when the situation with which the statute dealt is contemplated, the reasonable assumption is that by the omission to extend the statute to the full limits of constitutional power it must have been intended to leave the subjects unprovided for not beyond the pale of all law, but subject to the power which then controlled them, —*state authority* until it was deemed essential by further legislation to govern them exclusively by national authority. In fact, such conclusion is essential to give effect to the act of Congress, since to hold to the contrary would render inefficacious the regulations provided concerning the subjects with which it dealt. This becomes manifest when it is considered that, if the proposition now insisted upon were accepted, it would follow that the de-

livery of a criminal who was a fugitive from justice by one state on a requisition by another would exhaust the power, and the criminal, therefore, whatever might be the extent and character of the crimes committed in other states, would remain in the state into which he had been removed without any authority to deliver him to other states from whose justice he had fled." (Emphasis supplied.)

And, a fortiori, if a case of extradition falling within the express provisions of the U. S. Constitution but not embraced in an implementing federal statute, is, nevertheless, a matter proper to be dealt with by state action, certainly a case of extradition beyond the scope of the U. S. Constitution which is sought to be dealt with by state law in accordance with the spirit and purpose of federal law cannot be said to violate federal authority.

The Federal Constitution and statute relating to extradition are not sufficiently broad in their scope to be applicable to the case before us for decision and there is no conflict between the federal and state law. The latter merely supplements the former and is in accord with its spirit and purpose to facilitate the extradition of persons charged with crime. The state law thus fills a void in the field of extradition not covered by federal law. It is not inconsistent with federal law, but only serves to supplement and render interstate rendition more effective. This is in accord with the spirit and intention of the Federal Constitution, which has attempted to prevent anarchy from resulting because of the early difficulties faced by the several states in their efforts to deal with crime beyond their borders.[5] It should be observed that the language

5. See: *Ex parte Morgan* (D. C. S. D. Cal., 1948), 78 F. Supp. 756, 758, 759, aff'd sub nom. *Morgan* v. *Horrell* (1949), 9th Cir.,

of Art. 4, §2, is affirmative in nature and that there are no negative provisions in the Federal Constitution or statutes forbidding the extradition of one not physically present in the demanding state when the crime was committed. The grant of authority to the federal government in the Constitution of the United States exhausts its power to act, and all additional power is reserved to the states and to the people.[6]

It is accordingly our conclusion that ch. 49, §20 of the Acts of 1935, limiting the evidence in habeas corpus brought thereunder to the question of identity only, as held in the previous decision of this court in *Taylor* v. *Smith* (1938), *supra,* does not violate Art. 4, §2, cl. 2 of the Constitution of the United States.

We are further of the opinion that the extradition of persons charged with crime as attempted by ch. 49 of the Acts of 1935 directly bears upon the public safety, morals, and welfare and therefore is within the state's lawful exercise of its police power.[7] The statute, when applied to the facts of this case, does not in our view violate the due process clause of the 14th Amendment of the U. S. Constitution, nor the due course of law provision of §12,

---

175 F. 2d 404, cert. den. (1949), 338 U S. 827, 70 S. Ct. 76, 94 L. Ed. 503.

See also: Handbook on Interstate Crime Control, 3d printing, Pub. 1940, p. 37; Address of Judge A. H. Reid in 45 A. B. A. Rep. (1920), 432, 442; *Culbertson* v. *Sweeney, Sheriff* (1942), 70 Ohio App. 344, 44 N. E. 2d 807; *English* v. *Matowitz* (1947), 148 Ohio St. 39, 72 N. E. 2d 898; *In re Application of Campbell* (1946), 147 Neb. 820, 25 N. W. 2d 419, 423.

6. Amendment 10 of U. S. Constitution. See also: Discussion of Constitutional Aspects of State Extradition Legislation in 28 Ind. Law Journal, pp. 662, 667.

7. See: *Pittsburgh, etc., R. Co.* v. *State* (1912), 178 Ind. 498, 99 N. E. 801; *People* v. *Herberich* (1949), 276 App. Div. 852, 93 N. Y. S. 2d 272 and cases therein cited. (Aff'd 1950, 301 N. Y. 614, 93 N. E. 2d 913.)

Art. 1 of the Constitution of Indiana.[8] Similarly, it does not in our opinion violate the Natural Rights Section (Art. 1, §1) of the Indiana Constitution.[9]

As to appellant's additional contention that ch. 49 of the Acts of 1935 has abridged his right to habeas corpus in violation of Art. 1, §12 of the Indiana Constitution, we believe serious doubt arises as to whether such question is properly before us on this appeal, as such question does not appear to have been raised in the trial court. However, in order that our views as to such constitutional question will not be misconstrued, we express our opinion that the legislation is not an unlawful abridgment of the right of habeas corpus. The remedy of habeas corpus is of course subject to reasonable regulation by the legislature.[10] It is in the nature of a collateral attack,[11] and appellant cannot in this case properly complain that the Uniform Extradition Act prevents him from going behind the proceedings pending against him in the demanding state.[12] In fact, this Court in *Gluff* v. *Rouls* (1950), 228 Ind. 186, 188, 91 N. E. 2d 176, 177, refused in an extradition case to permit the accused in habeas corpus to go behind the proceedings in the

---

8. See: *Albert* v. *Milk Control Board of Indiana* (1936), 210 Ind. 283, 200 N. E. 688. That state enactments may always be measured as against the traditional due process concept of justice and fairness is discussed in 28 Ind. L. J., 662, 671, but no such violation of due process has been shown here.

9. See: *State ex rel. Mavity* v. *Tyndall* (1947), 225 Ind. 360, 74 N. E. 2d 914. Appeal dismissed (1948), 333 U. S. 834, 68 S. Ct. 609, 92 L. Ed. 1118.

10. *State ex rel. Allen* v. *Fayette Circuit Court* (1948), 226 Ind. 432, 81 N. E. 2d 683; *Wright* v. *The State* (1854), 5 Ind. 290, 61 Am. Dec. 90.

11. *Pritchett* v. *Cox* (1900), 154 Ind. 108, 56 N. E. 20; *Goodman* v. *Daly, Warden* (1929), 201 Ind. 332, 165 N. E. 906; *Detrich; Clark; Shoemaker* v. *Dowd, Warden* (1945), 223 Ind. 106, 112, 58 N. E. 2d 108.

12. See: *Worth* v. *Wheatley* (1915), 183 Ind. 598, 108 N. E. 958.

demanding state to show a defense there on the merits, the Court in the opinion by Emmert, J., stating:

" . . . these were matters of defense to be presented upon the trial of the cause in Ohio. [Citing inter alia] Section 9-438, Burns' 1942 Replacement (§20 of Ch. 49 of the Acts of 1935,—Uniform Criminal Extradition Act). . . . *Taylor* v. *Smith* (1938), 213 Ind. 640, 13 N. E. 2d 954."

We find no merit in the various contentions of unconstitutionality asserted by appellant.

The judgment is affirmed.

Achor, Arterburn and Bobbitt, JJ., concur.

Emmert, C. J., dissents with opinion.

### DISSENTING OPINION

EMMERT, C. J.—The appellant, Edmond Johnson, was charged in the State of Arizona with neglect of his wife. The affidavit, omitting the formal parts, was as follows:

"Personally appeared before me this 10th day of January, 1956, Cleo Johnson, who being duly sworn, complains and says that one: Edmond Johnson on or about the 15th day of February, 1955, at Precinct No. one, County and State aforesaid, committed a felony as follows, to-wit:

NEGLECT OF WIFE

That the said Edmond Johnson, being the husband of Cleo Johnson, and being able to provide for her support, did then and there wilfully and unlawfully neglect and refuse to provide said Cleo Johnson with the necessary food, clothing, shelter and medical attendance, he not being justified by any misconduct on her part in so doing, all in violation of R. S. A. Section 13-803.

All of which is contrary to the form of statutes in such cases made and provided and against the peace and dignity of the State of Arizona."

Raul H. Castro, County Attorney for the County of Pima, State of Arizona, filed a certificate with the Governor of Arizona, among other things alleging:

"Seventh: That the offense charged was committed on or about the 15th day of February, 1955, in Pima County, State of Arizona."

"Tenth: That the fugitive was within the State of Arizona at the time of the commission of the offense charged."

The warrant of Governor Craig of Indiana recited that the requisition of Ernest W. McFarland, Governor of the State of Arizona, dated April 2, 1956, demanded that appellant "be arrested as a fugitive from justice of the State of Arizona aforesaid."

These facts appear in the record without dispute, and at the hearing on the complaint for a writ of habeas corpus appellant, by counsel, properly offered to prove "That he has not been within the State of Arizona since the year 1951; that he has not fled from justice from the State of Arizona, or from any other State, and that at the time of the alleged offense committed in the State of Arizona, the petitioner was in the State of Indiana." He was charged with having committed the offense in the State of Arizona on or about the date named in the affidavit by his wife. He was not charged with having committed an act in Indiana or another state intentionally resulting in a crime in Arizona, and it was not alleged he was not in Arizona at the time of the commission of the crime and that he had not fled therefrom. When we affirm the judgment of the trial court for the appellee, we are condemning him on a charge not made, which under the Indiana cases is contrary to law, and, under the federal cases, is a denial of due process of law.

But aside from that I fail to see how we can escape

the conclusion that §6 and §20 of the 1935 Uniform Criminal Extradition Act offend the federal Constitution.

It is well settled that the rules on international extradition do not apply to interstate extradition. *Knox* v. *State* (1905), 164 Ind. 226, 73 N. E. 255, and cases therein cited. The federal Constitution makes provision for extradition as follows: "A person charged in any state with treason, felony, or other crime, *who shall flee from justice,* and be found in another state, shall on demand of the executive authority *of the state from which he fled,* be delivered up, to be removed to the state having jurisdiction of the crime." (Italics added.) Article 4, §2, Clause 2, Constitution of the United States.

The federal extradition act (February 12, 1793) was set out in full in *Hyatt* v. *New York ex rel. Corkran* (1903), 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657, 660. The present federal extradition act (June 25, 1948), Title 18, §3182, U. S. C. A., is almost the same as the 1793 Act with the exception the latter Act applies to a District or Territory, that a defendant is entitled to a discharge within thirty days if the agent from the demanding state does not appear, and the section makes no provision for the payment of costs. It is set out in full in the note.[1]

---

1. "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear.

The decisions of the Supreme Court of the United States on interstate extradition are binding upon each of the states.

> " . . . And it was the duty of that court [North Carolina court] to administer the law prescribed by the Constitution and statute of the United States, as construed by this Court. Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.) 223 U. S. 1, 55, 56 L. ed. 327, 348, 32 S. Ct. 169, 38 L. R. A. (N. S.) 44, 1 N. C. C. A. 75; Cincinnati, N. O. & T. P. R. Co. v. Rankin, 241 U. S. 319, 326, 60 L. ed. 1022, 1025, 36 S. Ct. 555, L. R. A. 1917A, 265." *South Carolina* v. *Bailey* (1932), 289 U. S. 412, 420, 53 S. Ct. 667, 77 L. Ed. 1292, 1296.

We have no authority to overrule the latest decision of the Supreme Court of the United States on interstate extradition, nor can the Uniform Criminal Extradition Act or the Reciprocal Enforcement of Support Act do that.

There is nothing sacrosanct about a uniform act that may be enacted by the General Assembly. It is true we indulge the presumption that it is prima facie constitutional, but the presumption in favor of a uniform act is no greater than the presumption for any other statute, regardless of the agency which may have drafted it. Our experience with the Uniform Act Regulating Traffic on Highways clearly proves a uniform act can be defective just the same as any other act not properly drafted may be defective. *Kelley* v. *State* (1954), 233 Ind. 294, 119 N. E. 2d 322; *McClanahan* v. *State* (1953), 232 Ind. 567, 112 N. E. 2d 575.

In *Hyatt* v. *New York ex rel. Corkran* (1903), 188 U. S. 691, 713, 23 S. Ct. 456, 47 L. Ed. 657, 662, *supra,*

---

If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged." June 25, 1948, c. 645, 62 Stat. 822. Title 18, §3182, U. S. C. A.

the relator was indicted in the state of Tennessee for the crime of grand larceny and false pretenses. It was conceded that he was not personally present in Tennessee at the time charged. The court held constructive presence within the demanding state was not sufficient under the federal Constitution and the enabling act, and reasoned as follows: "It is difficult to see how a person can be said to have fled from the state in which he is charged to have committed some act amounting to a crime against that state, when in fact he was not within the state at the time the act is said to have been committed. How can a person flee from a place that he was not in? He could avoid a place that he had not been in; he could omit to go to it; but how can it be said with accuracy that he has fled from a place in which he had not been present? This is neither a narrow, nor, as we think, an incorrect, interpretation of the statute. It has been in existence since 1793, and we have found no case decided by this court wherein it has been held that the statute covered a case where the party was not in the state at the time when the act is alleged to have been committed. We think the plain meaning of the act requires such presence, and that it was not intended to include, as a fugitive from justice of a state, one who had not been in the state at the time when, if ever, the offense was committed, and who had not, therefore, in fact, fled therefrom."

It is not necessary that a defendant charged with crime in the demanding state should have left that state for the purpose of avoiding prosecution under the federal Constitution. *Hogan* v. *O'Neill* (1921), 255 U. S. 52, 56, 41 S. Ct. 222, 65 L. Ed. 497. But that is not a holding that a defendant does not have to flee from justice and be found in another state as required

by the federal Constitution [Art. 4, §2, Clause 2, Constitution of the United States.] The court made that clear by the following language: "To be regarded as a fugitive from justice it is not necessary that one shall have left the state in which the crime is alleged to have been committed for the very purpose of avoiding prosecution, but simply that, having committed there an act which, by the law of the state, constitutes a crime, he afterwards has departed from its jurisdiction, and, when sought to be prosecuted, is found within the territory of another state. Roberts v. Reilly, 116 U. S. 80, 95-97, 29 L. Ed. 544, 549, 6 Sup. Ct. Rep. 291; Munsey v. Clough, 196 U. S. 364, 372-375, 49 L. Ed. 515-518, 25 Sup. Ct. Rep. 282; Appleyard v. Massachusetts, 203 U. S. 222, 227, *et seq.*, 51 L. Ed. 161, 163, 27 Sup. Ct. Rep. 122, 7 Ann. Cas. 1073; Illinois ex rel. McNichols v. Pease, 207 U. S. 100, 108, 109, 52 L. Ed. 121, 124, 125, 28 Sup. Ct. Rep. 58; Biddinger v. Police Comrs., 245 U. S. 128, 133, 134, 62 L. Ed. 193, 198, 199, 38 Sup. Ct. Rep. 41." *Hogan* v. *O'Neill* (1921), 255 U. S. 52, 56, 41 S. Ct. 222, 65 L. Ed. 497, 500, *supra*.

The proponents of §6 of the Uniform Criminal Extradition Act, §9-424, Burns' 1956 Replacement, rest their case on a mistake in the interpretation of the opinion in *Innes* v. *Tobin* (1916), 240 U. S. 127, 36 S. Ct. 290, 60 L. Ed. 562. See Constitutional Aspects of State Extradition Legislation, 28 Ind. L. Jl. 662; P. Warren Green, Duties of the Asylum State Under the Uniform Criminal Extradition Act, 30 Journal of Criminal Law and Criminology 295, 324. In *Innes* v. *Tobin, supra,* the accused was extradited from Oregon to Texas where she was charged with murder, and a conspiracy to commit murder. She was tried and acquitted in Texas, but the State of Georgia then made

a demand for her delivery to an agent of the State of Georgia for removal there as a fugitive from justice. The court held she should be extradited to Georgia. It did not hold that constructive presence in Georgia was sufficient for extradition. The court assumed there had been a flight from Georgia. It stated specifically, "Coming in the light of these principles to apply the statute, it is not open to question that its provisions expressly or by necessary implication prohibited the surrender of a person in one state for removal as a fugitive to another *where it clearly appears that the person was not and could not have been a fugitive from justice of the demanding state.* [Italics added.] Ex Parte Reggel, 114 U. S. 642, 29 L. Ed. 250, 5 Sup. Ct. Rep. 1148, 5 Am. Crim. Rep. 218; Roberts v. Reilly, 116 U. S. 80, 29 L. Ed. 544, 6 Sup. Ct. Rep. 291; Hyatt v. New York, 118 U. S. 691, 47 L. Ed. 657, 23 Sup. Ct. Rep. 456, 12 Am. Crim. Rep. 311; Bassing v. Cady, 208 U. S. 386, 392, 52 L. Ed. 540, 543, 28 Sup. Ct. Rep. 392, 13 Ann. Cas. 905." The court specifically held, "The Constitution provides for the rendition to a state of a person who shall have fled from justice and be found in another state; that is, for the surrender by the state in which the fugitive is found." *It did not hold that a statute broader than the constitutional limitations would be valid.* The court, by dicta, said the federal statute was not as broad as the Constitution and therefore the extradition to Georgia was proper since Congress had not legislated upon the matter. It is impossible to see how §6 of the Uniform Criminal Extradition Act, §9-424, Burns' 1956 Replacement,[2] stating that an accused may be extradited even though he was not in the demanding state at the time of the commission of the alleged offense, and had not fled

---

2. Nor is §3-3105, Burns' 1946 Replacement, constitutional.

therefrom, can be constitutional when extradition is only authorized for those "who shall flee from justice, and be found in another state" and "shall on demand of the executive authority of the state from which he has fled, be delivered up . . ." Section 6 of the Act is a plain attempt to amend the federal Constitution by state statute. P. Warren Green, Duties of the Asylum State Under the Uniform Criminal Extradition Act, 30 Journal of Criminal Law and Criminology 295, 323, 324. Until and unless the Supreme Court of the United States overrules some of its prior decisions, constructive presence in a demanding state is not sufficient for interstate extradition no matter how desirable it may be to extradite husbands who, after many years' absence, fail and neglect to support their wives in other states. If the problem is to be solved in a constitutional manner it should be by interstate compact by assent of Congress under Article 1, §10, Clause 3 of the Constitution. See Interstate Act on Parole and Probation, §9-3001, *et seq.*, Burns' 1956 Replacement.

It is also apparent from the decisions of the Supreme Court of the United States that *Taylor* v. *Smith* (1938), 213 Ind. 640, 13 N. E. 2d 954, is in direct conflict with *South Carolina* v. *Bailey* (1933), 289 U. S. 412, 53 S. Ct. 667, 77 L. Ed. 1292, and it should be overruled. In the Taylor case, Smith stood charged by indictment in the County of King, State of New York, with the crimes of damaging a building or vessel by explosives —endangering life by maliciously placing explosives near a building—permitting and maintaining a public nuisance—and possession of stink bombs. This court, without discussing a single decision of the Supreme Court of the United States, held Smith was not entitled to show in a habeas corpus hearing that he was within the State of Indiana at the time of the commission of

the charged offenses. The opinion was based upon §20 of the Uniform Criminal Extradition Act, which purported to limit the defenses to a showing that the person held was not the person charged with crime. This was error, and contravened the decisions of the Supreme Court of the United States.

In *South Carolina* v. *Bailey* (1933), 289 U. S. 412, 53 S. Ct. 667, 77 L. Ed. 1292, *supra,* Bailey was charged with murdering a police officer in Greenville, South Carolina. He was found in North Carolina, and on a habeas corpus hearing in North Carolina he introduced evidence showing he was not in South Carolina, but was in North Carolina on the day of the murder. The evidence at the hearing was conflicting on this issue and the court held, "he should not have been released unless it appeared beyond reasonable doubt that he was without the State of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice." (Page 1297 of 77 L. Ed.)

It is beyond the power of any state to prevent an accused from proving beyond a reasonable doubt that he was not within the demanding state at the time of the offense, and therefore under the Constitution could not have been a fugitive from justice. Necessarily this involves the alleged guilt of the accused, and §20 of the Uniform Criminal Extradition Act, §9-438, Burns' 1956 Replacement, is unconstitutional to the extent that it attempts to prohibit an accused from showing that he was not in the demanding state at the time of the offense.

It is to be noted that the appellant is not charged in Arizona with having committed any act therein. He is charged there with an omission to act. Under the holding of the majority opinion an accused who was never in the state where his wife might presently re-

side could then be charged with her non-support and be extradited thereto without being able to show on a habeas corpus hearing that he never was within the state. A state extradition act which pretends to authorize such procedure is not implementing the federal Constitution; it is attempting to remake and enlarge the federal Constitution. A state decision which approves such state legislation can be no more than an attempt to authorize state legislative amendment of the federal Constitution, as well as overrule all the decisions of the Supreme Court of the United States that have construed the federal Constitution on interstate extradition.

Obviously, the effect of the precedent made by this court is not limited to non-support offenses. Under it, Arizona could enact a statute making it a misdemeanor for a son to fail to care for the grave of his father there buried. The son may never have been in Arizona since his father's death so that the state could fasten the duty upon him, yet when the son is found in Indiana he could be extradited to Arizona without being entitled to show on a trial of a complaint for habeas corpus in Indiana, that he had never been in Arizona. No uniform act can stretch the police power of any state into an amendment of the federal Constitution, nor can it rewrite the opinions of the Supreme Court of the United States on what an accused may prove on a habeas corpus hearing on extradition.

I would reverse the judgment.

NOTE.—Reported in 148 N. E. 2d 413.